Paul J. **RICHARD**, Defendant, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 6061.

United States Court of Appeals
First Circuit.

March 29, 1963.

Frederick Bernays Wiener, Washington, D. C., with whom Archie Smith and Edward M. Botelle, Westerly, R. I., were on brief, for appellant.

Norman Sepenuk, Attorney, Department of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph M. Howard, Attorneys, Department of Justice, and Raymond J. Pettine, U. S. Atty., were on brief, for appellee.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

ALDRICH, Circuit Judge.

The defendant was convicted by a jury of falsifying his income tax returns. Apart from one matter not pressed at the argument his complaints on this appeal are to the admission of a stenographic transcript of what might be loosely termed a deposition, voluntarily given by him to the Internal Revenue Service, described by counsel as bobtailed, and to the denial of motions for a mistrial and for a new trial because of the publication, during trial, of certain newspaper articles.

The case was tried upon the net worth theory. The defendant makes no claim that the evidence did not warrant a conviction if his deposition was properly admitted.[1] The transcript was duly authenticated, and there is no suggestion of duress or overreaching so far as the merits are concerned. In fact the defendant was represented by counsel throughout the taking. The sole objection pressed is that in a number of places there are notations indicating that something was said off the record, and in some instances there is a purported short

1. The government argues, persuasively, that there was ample evidence without the deposition, but for the purposes of this appeal we will accept defendant's position that it was an essential part of the government's case.

summary, authorship not shown, of the subject matter of the off-the-record discussion, which had apparently included statements by the defendant. The government initially offered to black these matters out, but the defendant replied that this would not "help the situation. * * * [T]he document on its face * * * is not admissible." He explained his objection to be that the deposition was undeniably incomplete. The court having overruled that objection, nothing more was said by the defendant about the government's offer to black out "all off-the-record comments" and the document was introduced unmarred.

It is, of course, normally true that, upon objection, a party must offer the entire material portions of a statement. It would be a misconstruction to apply that principle here. There was no showing that any material part of the deposition had not been transcribed. The implication "on its face" is just the opposite. The natural assumption is that the parties went off the record for something considered to be immaterial. And, indeed, when, at the end of the deposition, defendant was asked if he had anything he wanted to add for the record, he replied he had not. If this is a "bob-tailed" transcript, the defendant is seeking to use a properly severed tail to wag the dog.

It may further be noted that at the outset of his deposition the defendant acknowledged that he understood that the answers "may be used * * * against you should the investigation result in a trial." He made no objection to the off-the-record procedure at the time. We find it surprising that under these circumstances he should think he could do so now.

The interpolations or interpretations of the off-the-record discussions present a different situation. If, however, the defendant had a separate objection to these insertions, he should have accepted the government's offer of excision. Again, the defendant is patently too late.

The facts with relation to the requested mistrial are these. The trial lasted six days, the government producing, as part of its case, some twenty-nine witnesses. One of these, a Mr. Wynhoff, having identified himself as a resident of Florida, testified that the defendant had paid him $3,000 for a certain horse. This figure entered into the government's net worth calculations. Wynhoff's direct testimony was not protracted. There was no cross. That evening a local newspaper published an item to the effect that bringing Wynhoff from Florida had cost the government $315.52 for thirteen words, or "$24.27 per word." [2] Although the article placed no special emphasis on it, it stated that the government was "compelled to summon Mr. Wynhoff when the defense refused to stipulate the $3,000 figure." The following morning the defendant moved for a mistrial. In denying the motion the court stated it assumed that the jurors had seen the article. The court did not suggest examining the jurors, individually or collectively, as to whether, if they had seen it, they had been influenced. Nor did the defendant at any time request such an examination.

Thereafter, in its charge, the court instructed the jury that the case should be decided "solely on the evidence that has been presented here in this courtroom," and that if any jurors had read any newspaper articles they should "disregard them completely." [3] In addi-

2. The total figure was right, but the division was wrong, as Wynhoff used seventeen words.

3. The government, quite properly, says that such an instruction should not identify an offending article. However, we

might suggest that it is often desirable to instruct a jury of the unfairness of considering newspaper articles because, by the very circumstance that they are not in evidence, there is no opportunity of contradicting their accuracy or otherwise explaining them away.

tion, the court gave the customary charge that the burden was on the government to prove its case beyond a reasonable doubt, and that no inferences should be drawn against the defendant for failure to take the stand.

Following the verdict the defendant moved for a new trial. Accompanying the motion was an affidavit to the effect that two jurors, although they had not seen the article in question, had seen another of like tenor the following morning, and that one recalled (nine days after trial) that it dealt with the cost to the government of summoning a witness from Florida. There was no indication that either juror remembered the defendant's refusal to stipulate. In denying this motion the court stated that the evidence to support the verdict was "overwhelming," and that no "conscientious and intelligent" jury could have reached any other result. Before us defendant does not challenge this characterization; nor is there anything contradictory thereto in his record appendix.

■■ The daily newspaper is one of the facts of life. We do not, of course, disagree with the defendant that some publications may be so prejudicial that the court should at least volunteer to interrogate the jury,[3½] or should even grant a mistrial out of hand. Colorful judicial observations quoted by the de-

fendant about the impossibility of eradicating skunks, or of obliterating elephants, however, do not become apposite until it is determined that such zoological phenomena have been introduced. The jury, knowing that the witness came from Florida, already appreciated that his testimony involved expense.[4] There was nothing startling about the particular amount. The only new fact brought to the jury's attention was the defendant's refusal to stipulate.

The defendant, of course, was not obliged to stipulate. Even though disclosure or comment [5] was improper, viewing this case as a whole we cannot quarrel with the district court's decision that these publications, relating to one of twenty-nine witnesses, did not prejudice the jury so as materially to increase the likelihood of a finding of guilt. Particularly is this so where the substantive evidence of guilt is "overwhelming." United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, cert. den. 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670; Williams v. United States, 4 Cir., 1954, 218 F.2d 276; United States v. Lee, 7 Cir., 1939, 107 F.2d 522, cert. den. 309 U.S. 659, 60 S.Ct. 513, 84 L.Ed. 1008; McFarland v. United States, 1945, 80 U.S.App.D.C. 196, 150 F.2d 593; cert. den. 326 U.S. 788, 66 S. Ct. 472, 90 L.Ed. 478.

Judgment will be entered affirming the judgment of the District Court.

---

3½. As to the defendant's own duty, see cases collected in Commonwealth v. Crehan, 3/26/63, Mass., 188 N.E.2d 923.

4. Comment about the cost of prosecution is not irremediable error. Windisch v. United States, 5 Cir., 1961, 295 F.2d 531; Calico v. Commonwealth, 1911, 145 Ky. 641, 140 S.W. 1036; McDonald v. State, 1927, 193 Wis. 204, 212 N.W. 635.

5. The articles not only revealed the defendant's refusal to stipulate, but gave the source as the United States Attorney. The defendant accordingly argues that we should view them in a more serious light.

Without passing upon such a principle, we point out that at the trial defendant's counsel expressly disclaimed "blaming [the United States Attorney] for this appearing in here. Of course, he has no control over these things." The motion for new trial, likewise, placed no blame on the United States Attorney. The defendant now argues that he must have been responsible. We will not consider on appeal what was disclaimed below. We may add that it seems quite apparent from the record that the United States Attorney was perturbed by, rather than the instigator of, the publications.