James E. "Buckey" BARKER, Petitioner,

v.

Ira M. COINER, Warden, West Virginia
State Penitentiary, Respondent.

Civ. A. No. C-69-2-E.

United States District Court
N. D. West Virginia.

Nov. 24, 1969.

L. E. Johnson, Fairmont, W. Va., for petitioner.

Chauncey H. Browning, Jr., Atty. Gen. of West Virginia, George E. Lantz, Deputy Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner, James E. "Buckey" Barker, is presently incarcerated in the West Virginia State Penitentiary at Moundsville, West Virginia. His imprisonment resulted from a conviction by a jury verdict of guilty of the charge of second degree murder in the Circuit Court of Boone County, West Virginia. In addition to the indeterminate sentence of five (5) to eighteen (18) years upon that conviction, Petitioner was also sentenced to an additional five (5) years based upon a former conviction.

Petitioner filed for a writ of habeas corpus in this Court, pursuant to 28 U.S. C.A. §§ 2241 et seq. Since Petitioner had previously satisfied the requirements of direct appeal exhaustion as discussed in Thompson v. Peyton, 406 F.2d 473, 474 (4th Cir. 1968), this Court considered Petitioner's request for a federal writ of habeas corpus on merit at a plenary hearing held in Fairmont, West Virginia, on September 19, 1969. Petitioner filed a copy of the indictment as Petitioner's Exhibit No. 1 and a copy of the transcript of his state court trial proceedings as Petitioner's Exhibit No. 2, both being admissible in evidence in accordance with 28 U.S.C.A. § 2247.

From a careful analysis of all the documents and testimony presented to this Court, it can be readily ascertained that the issues submitted for decision are: (1) whether the indictment upon which Petitioner was convicted was valid, (2) whether Petitioner's right to a jury trial was violated by the association of jurors with witnesses, (3) whether the trial court's instruction conformed to the law of the case, and (4) whether there was any evidence presented at the trial which would prove the corpus delicti.

■■ Petitioner's first allegation is that the indictment is invalid in that it does not charge the commission of the offense. It is a general rule that defects in the warrant or indictment may not, without more, be attacked in a federal habeas corpus proceeding. Pruitt v. Skeen, 118 F.Supp. 240, 241 (N.D.W.Va. 1953); Jones v. Ross, 257 F.Supp. 798, 801 (E.D.N.C.1966); Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036 (1925). However, an indictment which is so fatally defective as to deprive the trial court of jurisdiction will necessitate a review upon habeas corpus. Knewel v. Egan, *supra;* Matter of Gregory, 219 U.S. 210, 213–214, 31 S.Ct. 143, 55 L.Ed. 184 (1911).

■ The standard used for determining whether an indictment meets the test of sufficiency is that to be valid it must charge the defendant with the basic elements of the crime. Snead v. Smyth, 273 F.2d 838, 840 (4th Cir. 1960); Dalton v. Hunter, 174 F.2d 633, 635 (10th Cir. 1949); Doss v. North Carolina, 252 F.Supp. 298, 304 (M.D.N.C. 1966). The indictment filed by Petitioner in this action does charge the defendant with the elements of a murder in substantial compliance with the form set forth in West Virginia Code § 62–9–3.[1] Moreover, it has been held by the West Virginia Supreme Court of Appeals that "[a]n indictment substantially following the form provided by the statute is sufficient. State v. McMillion, 104 W. Va. 1, 138 S.E. 732." State v. Burdette, 135 W.Va. 312, 329, 63 S.E.2d 69, 80 (1950). Thus, the Court finds that Petitioner was indicted with the fullest degree of pleading sufficiency and validity.

1. West Virginia Code § 62–9–3 by its own terms does not require that it be followed verbatim: "An indictment for murder shall be sufficient if it be in form, tenor or effect as follows * * *." Therefore, the use of alternative English as seen in the indictment herein, does not render the indictment void. The indictment does, in its own way, plainly show the elements of the offense for which Petitioner stood accused.

■ Petitioner's second allegation is that his right to a trial by jury was violated because the jurors were permitted to associate with witnesses, and his third allegation is that the instructions given by the trial court did not conform to the law of the case. These contentions are matters which are within the purview of appellate remedies, but under the circumstances presented here they are not issues cognizable within the framework of federal habeas corpus, and should not be considered upon this application.

■ The fourth contention raised by Petitioner alleges that there was no evidence presented in his trial which would prove the corpus delicti. If this allegation is factually true, Petitioner's conviction would be lacking in due process as required by the Fourteenth Amendment to the United States Constitution, and therein made specifically applicable to the states. Being, therefore, a contention that Petitioner is "in custody in violation of the Constitution * * * of the United States," this allegation, unlike the previous two, meets the requirements specified by Congress concerning the scope of review upon habeas corpus, and is ripe for decision by this Court. 28 U.S.C.A. § 2241(c) (3). See Grundler v. North Carolina, 283 F.2d 798, 801 (4th Cir. 1960), cert. denied 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).

■ "Under West Virginia law, the corpus delicti in criminal homicide cases consists of proof of (1) a death and (2) that the death was caused by a criminal agency. State v. Stevenson, 147 W.Va. 211, 127 S.E.2d 638 (1962), cert. denied as Stevenson v. West Virginia, 372 U.S. 938 (1963), 83 S.Ct. 886, 9 L.Ed.2d 768." Riffle v. King, 302 F.Supp. 992 (N.D. W.Va.1969). Petitioner does not deny that the body found was that of the woman he was charged with having killed, but does argue that the state did not introduce any evidence which showed that the woman's death was caused by the requisite criminal agency.

■ When the sufficiency of the evidence presented to prove a certain criminal element is called into question by way of federal habeas corpus, the scope of review is limited to a determination of whether *any* evidence was introduced concerning the particular element. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Harlan v. McGourin, 218 U.S. 442, 447–448, 31 S.Ct. 44, 54 L.Ed. 1101 (1910); Williams v. Peyton, 414 F.2d 776, 777 (4th Cir. 1969); Young v. Boles, 343 F.2d 136, 138 (4th Cir. 1965); Riffle v. King, supra. Therefore, "[t]he probative strength of the evidence is not in issue." Williams v. Peyton, *supra,* 414 F.2d at 777.

■ A detailed examination of the state trial court record in this case reveals that there is not a total lack of evidentiary support for the determination of the second (criminal agency) element of proof of the corpus delicti. To the contrary, many segments of the trial transcript contain testimony concerning that element. The relevant facts regarding the death of decedent are as follows.

On Saturday, June 24, 1967, the deceased, who worked as a waitress in the Galley Restaurant a beer tavern in Charleston, Kanawha County, West Virginia, purchased, in the company of several friends, a white bikini. She had expressed the intention of going swimming that same afternoon and had been given the rest of the afternoon off from her work. After shopping, she returned to the Galley Restaurant, changed into her new bikini, and left in the company of two male friends.

The three companions, all having consumed some alcoholic beverages that afternoon, drove to the Dinner Bell, a beer tavern in Boone County, West Virginia. Decedent's two male companions left her at the Dinner Bell after her attention had been diverted from them to Petitioner. A short time later, Petitioner and the deceased left the Dinner Bell saying that they were going swimming. Trial transcript, pp. 273 and 283. Nathan Little, Jr., testified that as the Petitioner and the woman in the white bikini were leaving, "[h]e [Petitioner]

said 'come and go with us, we will take her out, * * *.' I told him I didn't want to do that. The woman said, 'Come on, chicken.' " Trial transcript, p. 297. There was no one in the accompaniment of Petitioner and the deceased as they left. Trial transcript, p. 302.

The next link in the chain of events which occurred that afternoon was that Petitioner was seen by several persons entering the Fork Creek Hunting Area with a woman in his car. Trial transcript, pp. 397, 417, and 431.

About the same time that the pair was said to have been in the park, a fisherman who was in the nearby stream, heard voices coming from the direction of Cabin #1 in the Fork Creek Hunting Area, close to where the body was subsequently found. Specifically, James Cantley recalled hearing a woman's vioce saying, "Don't; stop." Trial transcript, p. 470.

Petitioner was later seen leaving the Fork Creek Hunting Area. In fact, he stopped his car on the road to speak with a friend who had also stopped his car while going toward the park. Both occupants of the car entering the park testified to seeing blood or something that looked like blood on Petitioner's hand. Trial transcript, pp. 493 and 519.

That same evening, Petitioner stopped at a friend's house. Not finding the friend home, Petitioner took the friend's brother, James Harry Barker, along with him to help search for this friend. James Harry Barker, who is of no relation to Petitioner, testified as to events and conversation which transpired during the course of their brief excursion together. He recalled watching as Petitioner "throwed a knife scabbard out of the car." Trial transcript, p. 539. He also testified that he saw "some blood or something or other on his [Petitioner's] hand." He indicated that, although he could not swear that it was blood, it was red in color. Trial transcript, p. 540. James Harry Barker then recounted in his testimony a monologue spoken to him by Petitioner while they were driving.

"He told me he went over to Fork Creek and this man and woman was over there and he said he killed them. He said he stabbed them. And this other woman, he told me he killed her, and he said that if anybody stopped us just tell them I let her out up on Short Creek Mountain, I think it was." Trial transcript, p. 547–48.

■ It is generally recognized that the elements of the corpus delicti may be proved by circumstantial evidence. 7 Wigmore, Evidence § 2081, p. 422 (3rd ed. 1940); 30 Am.Jur.2d Evidence § 1141 (1967); Perovich v. United States, 205 U.S. 86, 27 S.Ct. 456, 51 L.Ed. 722 (1907); State v. Lucas, 103 W.Va. 743, 751, 138 S.E. 393, 396 (1927). Thus, this Court was able to examine the testimony in its entirety in order to determine whether *any* evidence existed which would prove the essential elements of the corpus delicti. See Riffle v. King, *supra*.

The evidence, as set forth above, shows that Petitioner was not only with the deceased at the approximate time when, and at the general location where, the death of decedent occurred, but that the Petitioner later made a voluntary declaration to a non-interested person that he had committed a murder at that time and place. This is evidence of the criminal agency element of the corpus delicti, and is sufficient to come within the standard set forth in Williams v. Peyton, 414 F.2d 776, 777 (4th Cir. 1969) and Thompson v. City of Louisville, 362 U.S. 119, 80 S.Ct. 624 (1960), as discussed above.

Because there was evidence presented at Petitioner's state court trial which demonstrated that the death in issue resulted from a criminal agency, this Court concludes that Petitioner was not denied due process of law under the Fourteenth Amendment when he was convicted. See Riffle v. King, *supra*. For this reason and for the reasons set forth earlier, an order will be entered denying the relief sought and dismissing Petitioner's application.