William Edward **HARRIS**, Petitioner,

v.

**STATE OF NORTH CAROLINA, D. P. Henry, Administrator, Respondent.**

No. C–109–G–68.

United States District Court, M. D. North Carolina, Greensboro Division.

April 1, 1970.

William Edward Harris, pro se.

## MEMORANDUM OPINION AND ORDER

GORDON, District Judge.

The petitioner, William Edward Harris, a prisoner of the State of North Carolina, has filed with this Court a petition for a writ of habeas corpus pursuant to the provisions of Title 28, U.S.C. § 2241 et seq., and accompanied the petition with an affidavit of poverty. The petition was filed pro se and an order has heretofore been entered permitting the petition to be filed without prepayment of costs or fees or security therefor.

Petitioner was arrested in Winston-Salem, North Carolina, on November 6, 1967, upon a warrant charging felonious breaking and entering and larceny. An indictment was returned on November 13, 1967, and the petitioner was called for trial on November 27, 1967. He entered a plea of not guilty to the charge but was found guilty by a jury. On December 1, 1967, the petitioner was sentenced to a term of five to ten years for breaking and entering. A sentence of seven to ten years was imposed on the larceny charge but was suspended for a period of five years.

On July 12, 1968, the petitioner filed a petition for a writ of habeas corpus with this Court which was denied by a Memorandum Opinion and Order on July 18, 1968. The petitioner appealed this order to the Fourth Circuit Court of Appeals, which court dismissed the appeal. The petitioner then applied for a writ of certiorari to the United States Supreme Court, which court denied the writ. While his petition was pending before the Supreme Court, Harris filed another petition with this Court. This latter petition was denied by order dated February 5, 1969. Petitioner appealed this order and the matter was remanded

to this Court by the Fourth Circuit. Harris v. North Carolina, 4 Cir., No. 13,-853 (Decided August 27, 1969).

On January 29, 1969, Harris received a post-conviction hearing in the Superior Court of Forsyth County pursuant to North Carolina General Statute § 15–217, et seq. On January 31, 1969, the Honorable Robert M. Martin entered his judgment, containing findings of fact and conclusions of law, which denied the petitioner any relief. Because of the transfer of personnel in the state court system, a transcript of the post-conviction hearing was not received until January 29, 1970. At that time a federal plenary hearing had already been ordered and counsel for the petitioner had been appointed. In order that the petitioner could fully present his contentions to the Court, a hearing on the merits was held in Winston-Salem, North Carolina, on February 9, 1970.

Petitioner's primary contention, and the one which was noted on remand from the Fourth Circuit, is that he was denied due process of law because of the aroused community sentiment and passions which existed in Winston-Salem at the time of his trial. In early November, 1967, Winston-Salem was the scene of rioting. November 6, the day that the petitioner was arrested, was the same day that the National Guard was withdrawn from the city. More particularly, the petitioner, a Negro, contends that since the riots were racial in nature, and since his case was placed on a docket which did include a substantial number of cases which arose out of the riots, he did not receive a fair trial because of the inflamed passions and prejudices which had pervaded the community. Judge Martin, in the judgment denying post-conviction relief, found:

"6. The petitioner complains that he did not have a fair and impartial trial because of the inflammatory atmosphere brought about by recent riots in the City of Winston-Salem. It appears from the evidence that the riots referred to occurred between the 1st and 6th of November, 1967, at which time there were units of the National Guard on duty in Winston-Salem. The evidence further reveals that the Guard was withdrawn by the 6th of November and that the petitioner was tried on the 27th of November, 1967, some twenty days subsequent to the time when the National Guard was withdrawn from the City of Winston-Salem. The Court finds that there is no believable evidence that can be believed that the minds of the jury were inflamed by anything that occurred during the riots; that some twenty days before the trial the National Guard had been withdrawn from the city; that there was no unusual or extraordinary policing in or near the courthouse, and the Court finds as a fact that the defendant had a fair and impartial trial."

At the State post-conviction hearing, the following colloquies took place between the Honorable Thomas W. Moore, Jr., Esquire, Solicitor for the State, and the petitioner:

"Q. Did Mr. Davis pick a jury and question the jury that was sitting in this box over here before twelve of them were finally decided upon?

"A. That is correct.

"Q. In fact, he turned to you while you were sitting there and asked you if that jury looked all right, didn't he?

"A. Yes, sir."

\*     \*     \*     \*     \*     \*

"Q. I just asked you if there wasn't a colored fellow on the jury.

"A. Does that mean that he's going to show favoritism to me? Was that the deciding vote?

"Q. You are not claiming that the other eleven were white and that they were prejudiced against you?

"A. No, sir.

"Q. Are you saying now that the jury was fair?

"A. You are trying to say that it was one colored fellow on the jury
* * *

"Q. You just answer my question.

"A. According to the evidence presented, they did the best that they thought.

"Q. They did the best they could?

"A. Yes, sir."
* * * * * *

"Q. Let me ask you this: Now, didn't Mr. Davis here, when he questioned the jury, ask them if they could hear this evidence in spite of the trouble that we had here fairly and impartially and give you a fair trial—the defendant and the State a fair trial?

"A. Yes, sir.

"Q. He asked that question, didn't he?

"A. Yes, sir.

"Q. And didn't each of them say yes to that?

"A. Mr. Moore—

"Q. Just answer my question. Well, let me ask you—

"A. Yes, sir.

"Q. Didn't they say yes to that?

"A. Yes, sir."
* * * * * *

"Q. So, you were tried by twelve people who said to your lawyer when he asked them that they had no prejudice against you about this case and that they could hear it fairly and impartially?

"A. Yes, sir."

Furthermore, Mr. Harry Glenn Davis, Esq., petitioner's court-appointed attorney during his trial in 1967 stated that from the answers of the jury, he was satisfied that the panel would be impartial.

■ Undoubtedly there was great public concern relating to the incidents which had occurred previously that month, but nowhere within the records of petitioner's state or federal hearing is there any evidence which would indicate that the petitioner's constitutional right to a fair and impartial trial was infringed upon. The Court cannot establish a rule of law that there is a prima facie presumption of denial of due process every time a member of a minority race is brought to trial a short time after a riot, racial in origin, has occurred. The Court finds that this contention is without merit.

■ Petitioner, at the federal plenary hearing, raised for the first time the contention that he had been denied the right of appeal. It was brought out at the hearing that at the time of his conviction, Harris was fully aware of his right of appeal. At that time, he told his attorney, Mr. Davis, that he did not want to appeal because he did not think that an appeal was to his advantage. Mr. Davis, in his testimony, stated that he had begged Harris to let him appeal, but that Harris refused. Harris testified that after he had been sentenced, he changed his mind about an appeal and attempted to contact Mr. Davis, but was unable to do so because he was not allowed to use the telephone at the jail. The petitioner was unable to explain why he had not told his mother or his sister to contact his attorney, since he was able to communicate with them. Nor does he explain why it took him more than seventy days to write Mr. Davis a letter concerning the prospects of an appeal. Of course, the length of time during which the petitioner procrastinated extended far beyond the time allowed for appeal. Petitioner here had the requisite knowledge of his right of appeal. Nelson v. Peyton, 4 Cir., 415 F.2d 1154 (1969). State officials and court-appointed attorneys are not burdened with the duty of anticipating the unexpressed whims of state prisoners. Harris was aware that there was a limitation upon the time that he had in which to exercise this right. Yet, he, himself, testifies that the only efforts he made in this direction were an attempt to place a tele-

phone call and a belated letter to his attorney. Harris has had a history with this Court of pursuing a point relentlessly. It cannot be believed that being unable to use a telephone would have prevented him from having a relative contact his attorney or from mailing a letter to his attorney. In his many writings, Harris has placed numerous contentions before this Court, but prior to the hearing in 1970, never has there been a mention of the denial of his right to appeal. At his post-conviction hearing in January, 1969, the question of whether Harris had appealed was brought up at least on three different occasions, yet never did the petitioner claim that he had not appealed because he had been denied the right. These circumstances create a credibility gap and the Court finds this contention to be without merit.

■ The petitioner has also claimed that he received "too speedy a trial." The record shows that he was brought to trial three weeks after he was arrested. Mr. Davis was appointed by the court to represent the petitioner the day after he was arrested. Davis testified at the February 9, 1970, hearing that he had had an opportunity to discuss fully the case with Harris. Davis stated that he had had approximately four conferences with Harris and had interviewed witnesses. There is no indication that Harris was rushed to trial unprepared and defenseless. Quite the contrary, it appears that further time was not necessary in order to adequately prepare for the upcoming trial.

Also, Harris has contended that his trial counsel, Mr. Davis, inefficiently represented him at the trial. The Court holds that Judge Martin's finding of fact on this point conclusively, accurately and sufficiently speaks to this issue:

"5. The petitioner contends that his court-appointed attorney was incompetent and ineffective and that his representation was not proper. As to this allegation, the petitioner agrees that his counsel represented him properly in every phase of the case and that his only complaint in this respect is the adverse verdict of the jury, of which he agrees his lawyer had no control. The Court finds there is no believable evidence that can be believed that the petitioner was not competently represented by counsel at his trial, and that competent counsel, to-wit: H. Glenn Davis, did represent said petitioner in a capable and diligent manner at said trial after having had time to prepare and adequately and properly preparing said case for trial."

■ Furthermore, the petitioner contends that the warrant and indictment were defective. "It is a general rule that defects in the warrant or indictment may not, without more, be attacked in a federal habeas corpus proceeding." Barker v. Coiner, 306 F.Supp. 227, 228 (N.D.W.Va.1969), and cases cited therein. The indictment charged store-breaking, larceny and receiving in the language of the statute under which it was drawn, North Carolina General Statutes § 14–54 and § 14–72, and contained the elements of the offense intended to be charged, and sufficiently informed the petitioner of the crime with which he was charged so that he could adequately prepare his defense and could plead the judgment as a bar to any subsequent prosecution for the same offense. Nothing more was required. United States v. Guthrie, 4 Cir., 387 F.2d 569 (1967).

■ Petitioner further contends that the following recommendation which was attached to Harris' commitment papers constitutes cruel and unusual punishment:

"Note To Department of Correction

This defendant was convicted of an offense occurring during the riots in Winston-Salem during the first week in November, 1967, and it is the opinion and recommendation of the court that the public peace and safety require that the defendant not be placed upon work release or permitted to leave his place of confinement under G.S. 148–4 or any other statute

but be kept at all times in close security until the sentence is completed.

s/ Frank M. Armstrong

Judge Presiding"

This contention is frivolous. This is a mere recommendation attached to committal papers and has no legal effect upon the type or place of incarceration of the petitioner. By statute in North Carolina, N.C.G.S. § 148–4, the power of control and custody of the prisoner is in the hands of the Commissioner of Correction for the State of North Carolina. Even if the attachment purported to have some legal effect, it is doubted that such would be binding upon the commissioner under present North Carolina case law. State v. Garris, 265 N.C. 711, 144 S.E.2d 901 (1965); State v. Wall, 273 N.C. 130, 159 S.E.2d 317 (1968).

■ Finally, petitioner has contended that his rights were violated in that he was tried with another defendant who did not have the protection of counsel. Harris writes the following in one of his briefs: "Now petitioner contends that being tried side-by-side along with a man that has no protection of counsel for his judicial confrontation, is prejudicial and incriminatory in itself." The Court rejects this *per se* inference of an infringement of a constitutionally protected right. If the co-defendant was denied the right to an attorney, then it is for the co-defendant to complain, not the petitioner here. This is, at best, a conclusory allegation on the part of the petitioner. He has shown no harm resulting from being tried at the same time as his co-defendant. Harris was represented by counsel at his trial. The Court does not believe that anything detrimental to the petitioner occurred during the trial simply because his co-defendant was not represented by counsel. A petition for habeas corpus relief must contain more than mere conclusory allegations that a constitutional right has been violatd. Storkes v. California, 9 Cir., 364 F.2d 824 (1966); Lee v. Wilson, 9 Cir., 363 F.2d 824 (1966). Facts in support of the allegations must be likewise alleged.

ORDER

For the reasons stated, it is ordered that the petition of William Edward Harris, the petitioner herein, for a writ of habeas corpus be, and the same hereby is, dismissed.

It is further ordered that the Clerk forthwith mail a certified copy of this Memorandum Opinion and Order to the petitioner at the place of his confinement, and two certified copies to the Attorney General of the State of North Carolina.