Gerald PROCELLA, Petitioner,

v.

Dr. George J. BETO, Director of the Texas Department of Corrections, Respondent.

Civ. A. No. 70–H–39.

United States District Court, S. D. Texas, Houston Division.

Nov. 13, 1970.

John M. Ille, Houston, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., Robert C. Flowers and Charles R. Parrett, Asst. Attys. Gen., Austin, Tex., for respondent.

## MEMORANDUM OPINION AND ORDER

NOEL, District Judge.

Petitioner, represented by retained counsel, has filed a petition for the writ of habeas corpus contending that his state conviction for murder with malice should be set aside because he was denied a fair trial. Respondent has answered attaching state records and pleadings, and has moved to dismiss the petition.

This Court has jurisdiction, 28 U.S.C. § 2254. Respondent concedes that state remedies are exhausted.

On June 9, 1970, the Court filed a Memorandum and Order in this case summarizing the petitioner's complaints, requesting the parties to inform the Court if they desired oral hearings, and requesting the parties to submit affidavits from potential witnesses.

On July 17, 1970, in response to a letter from petitioner's counsel asking what evidence the Court desired to be developed by affidavit, and requesting oral hearing, the Court directed its Deputy Clerk to write petitioner's counsel particularizing the evidence sought by the Court.[1] The letter also extended the prior deadlines for the submission of original and rebuttal affidavits. The case was set for pretrial and oral argument on September 4, 1970.

During the September 4, 1970 pretrial hearing petitioner's counsel announced to the Court his decision to rest Procella's case on the records, pleadings and affidavits before the Court. In response to direct inquiry from the bench inquiring why he had not submitted affidavits,

he replied that he did not know of any witnesses with personal knowledge of the facts before the Court, and expressed his belief that further affidavits were not necessary to present his client's case. After hearing the oral arguments of counsel, the Court concluded that Procella's petition should be denied for the reasons to be developed below.

The facts have been gleaned from the pleadings, court records and affidavits filed by the parties, and the opinion of the Texas Court of Criminal Appeals in Procella v. State, 395 S.W.2d 637 (Tex. Crim.App.1965); cert. denied 384 U.S. 934, 86 S.Ct. 1450, 16 L.Ed.2d 534 (1966).

On November 21, 1962, the Harris County, Texas, grand jury indicted Gerald Procella and James Edward Graves for the crime of murder with malice aforethought. James Graves was subsequently tried, convicted and sentenced to death for his part in the crime.

On November 7, 1964, Gerald Procella was tried, convicted and sentenced to life imprisonment by a jury. The evidence of his guilt was overwhelming. The Texas Court of Criminal Appeals summarized the evidence in its opinion:

> Appellant orally confessed that he was the driver of the automobile at the time of the robbery; that they only planned to rob the man and not to kill him; that they heard on the radio Mr. Phillips, the deceased, was dead and they knew they had to get rid of the pistol and that he threw it into the bayou. A pistol was subsequently found by a diver at the place that had been pointed out by appellant. Also, a fingerprint on a paper bag left in the motel (scene of the robbery) by Graves (co-defendant) was identified as the right little fingerprint of the appellant. Procella v. State, *supra*, at 638.

After the jury verdict was rendered Procella's counsel, Mr. O'Dowd, ques-

---

1. The letter stated in part:
   "The judge intended that counsel should submit affidavits from the other jurors who would have personal knowledge of the alleged jury misconduct."

tioned several of the jurors about their deliberations in Procella's case. He then filed a motion for new trial predicated upon his allegations that Procella had been denied a fair trial because the jury had considered matters which were not introduced into evidence during the trial, and which were highly prejudicial to Procella because they caused him to be found guilty and caused him to receive a longer sentence than the jury believed fit his crime. Accompanying the motion was Mr. O'Dowd's sworn affidavit alleging that a juror, Mr. O. V. Gay, had related to him the factors considered by the jury while deliberating Procella's guilt and punishment. He alleged that Mr. Gay told him several jury members had mentioned that Procella's co-defendant had received a death sentence. Mr. Gay also was alleged to have told him that the jury disobeyed the judge's instructions not to discuss the length of time Procella would actually serve any sentence they gave him, and while discussing the length of actual service, misconstrued the law by their belief that a man would serve less time in prison on a life sentence than the twenty-five year sentence they had been considering. *See*: Pages 49–60 of the transcript in State v. Procella, Criminal District Court No. 4, Harris County, Texas.

In preparation for an oral hearing on Procella's motion for new trial Mr. O'Dowd moved the Clerk to issue subpoenas for two of the jurors, Mr. O. V. Gay and Mrs. Crellins.

Prior to the time set for the oral hearing the District Attorney's office contacted Mr. O. V. Gay and five other jurors, and had their affidavits taken and notarized by one of the prosecuting attorneys in Procella's case, Mr. Maida. *See*: Pages 74–79 of the transcript of the hearing on the motion for new trial in State v. Procella, Criminal District Court No. 4, Harris County, Texas (hereafter M.N.T. p. ——). These affidavits denied the allegations of impropriety made by Mr. O'Dowd in his affidavit. Mr. Gay's affidavit rebutted the state-

ments attributed to him by Mr. O'Dowd. Mr. Gay's affidavit stated:

> The verdict of all .twelve jurors who served on this case was guilty and the unanimous punishment assessed was life in the state penitentiary. * * *
>
> * * * At no time during our deliberations was there any consideration given by any of the jurors, to my knowledge, to the length of time the defendant would have to serve in the penitentiary because of the life sentence. We did not discuss nor consider the fact of parole or the possibilities of serving a shorter or longer period of time than the punishment assessed.
>
> In the deliberation we did not discuss what punishment the co-defendant, James Graves, had received or would receive. I did not, in fact, know that James Graves had received the death penalty until after our verdict had been received in open court in the case against Gerald Procella. M.N.T. p. 74.

The prosecutor took these affidavits to the trial judge prior to the hearing. The trial judge then called the sheriff's office and had the jurors previously subpoenaed by Mr. O'Dowd instructed that they need not attend the hearing because the Court had quashed the subpoenas. M.N.T. pp. 9–11.

Although not subpoenaed, Mr. O. V. Gay was present at the oral hearing on the motion for new trial. Mr. O'Dowd attempted to call Mr. Gay as his first witness. The Court denied his request, and instead on voir dire by the state, admitted into evidence the affidavit of Mr. Gay. M.N.T. pp. 15–17.

After denying repeated requests by Mr. O'Dowd to call Mr. Gay as a defense witness, the Court had Mr. Gay sworn and called as the Court's own witness. The Court asked Mr. Gay to read his affidavit, and then asked him if it were true. Mr. Gay replied that it was correct. M.N.T. pp. 23–24. The Court then asked Mr. Gay if any consideration was given to the length of time Procella

would have to serve on a life sentence. Mr. Gay replied that the jury did not. M.N.T. pp. 27–28.

At this time Mr. O'Dowd asked permission to examine Mr. Gay on voir dire. The Court refused his request. M.N.T. p. 28.

The Court resumed its examination of Mr. Gay. During this examination the following exchange took place:

Q. by the Court: Was it discussed in your presence or did you hear it discussed, the punishment of the co-defendant, James Graves, what he had received in this case?

A. by Mr. Gay: It was mentioned but that was it. I heard somebody, I don't remember just who it was, say that the other boy got the chair, and somebody said "Wait a minute, hold it right there, that boy there is not on trial. This one is. Don't mention that any more."

Q. by the Court: Did that affect your verdict at all?

A. by Mr. Gay: No, Sir.

Q. by the Court: You did not even consider it for any purpose?

A. by Mr. Gay: No, sir, I had no reason to. M.N.T. pp. 27–29.

The Court then tendered the prosecutor the right to cross-examine the witness. The prosecutor declined, and after heated discussion, the Court tendered the right of cross-examination to Mr. O'Dowd. During this cross-examination the following colloquy occurred:

Q. by Mr. O'Dowd: Mr. Gay, you did have a conversation with me on at least two occasions before today, didn't you?

A. by Mr. Gay: Well, yes.

Q. by Mr. O'Dowd: Isn't it true that you yourself told me that some of the jurors at one point in the deliberations were considering a verdict of twenty-five years?

A. by Mr. Gay: That's right.

Q. by Mr. O'Dowd: Mr. Gay, was there at all in the jury room any discussion about how long the defendant might have to serve any particular sentence that should be imposed upon him?

A. by Mr. Gay: None after we reached a verdict. No. M.N.T. pp. 31–33.

The Court then interrupted the cross-examination and would not allow Mr. O'Dowd any further examination on the issue. M.N.T. p. 33.

The Court then resumed its direct examination of Mr. Gay.

Q. by the Court: Did you discuss how long he (Procella) would have to serve on a life sentence?

A. by Mr. Gay: No, sir, it wasn't discussed.

Mr. O'Dowd again requested permission to question Mr. Gay on this issue, and the Court again refused his request. M.N.T. p. 34.

After the movant rested, the Court received the affidavits of the other five jurors, rebutting Mr. O'Dowd's affidavit about jury misconduct, into evidence. The state then tendered testimony from its assistant prosecutor, Mr. Maida, concerning the manner in which the affidavits were taken. M.N.T. pp. 37–70.

At the close of the state's case the Court denied Procella's motions for new trial. The Court did not disclose his reasoning to counsel.

On appeal the Court of Criminal Appeals upheld the trial court's rulings on the motion for new trial. *Procella v. State, supra.*

The opinion of the Court of Criminal Appeals is relevant to this case because its discussion of the relevant Texas law illuminates the reasoning processes which the state trial court must have used when it drastically curtailed Procella's ability to question jurors about their alleged misconduct.

The Court of Criminal Appeals pointed out that under Texas Criminal Procedure an accused has a limited right to

question jurors about their conduct during their deliberations. This right is limited because the case law requires that an accused present an unrebutted prima facie case of jury misconduct before he will be allowed to invade the sanctity of the jury room. To fulfill the burden the motion for new trial must be accompanied by an affidavit of a juror or of counsel, who alleges he spoke to a juror and was told of jury misconduct, or of a third party who knows of the misconduct. Procella v. State, *supra,* and cases there cited.[2]

Since the affidavit of Procella's counsel had been rebutted prior to the oral hearing on the motion for new trial, it is reasonable to infer that the state trial judge made the following conclusions when he quashed Procella's juror subpoenas and limited the scope of his examination of juror Gay: (1) That the affidavits of juror Gay and of the other five jurors (which were submitted by the state in response to Mr. O'Dowd's affidavit reciting a conversation he had had with juror Gay in which the juror allegedly spoke of jury misconduct) rebutted Procella's prima facie case of jury misconduct; (2) That once Procella's prima facie case had been destroyed he was not entitled to question jurors to substantiate his claims of jury misconduct; (3) That the trial judge called juror Gay as a limited purpose witness who would be allowed to answer only questions verifying the accuracy and authenticity of his affidavit; (4) That once juror Gay verified the affidavit's authenticity and accuracy the trial court again concluded that Procella had failed to fulfill his burden of presenting a prima facie case and therefore should not be allowed to question juror Gay about the jury's deliberations or to call any other juror to question him or her about the deliberations; (5) That the judge did not consider any of juror Gay's conflicting testimony about alleged jury misconduct because it was inadmissible; and (6) That the trial judge denied Procella's motion for new trial because he did not tender any *admissible* evidence to corroborate his allegations of jury misconduct.

After examining Procella's petition for habeas corpus and listening to the oral argument of his counsel during the September 4, 1970 pretrial it is clear that his claims for relief boil down to the following contentions: (1) that he was denied his federal due process right to be tried by a jury which did not know his co-defendant had been found guilty and sentenced to death; (2) that he was denied his federal due process right to be tried by a jury which did not misconstrue the state law governing punishment in such a manner that an accused received a longer actual sentence than the jury believed fit his crime; (3) that the state trial judge denied him his due process right to receive a fair trial by refusing to allow his counsel to subpoena or to freely question jurors about the misconduct enumerated above; and (4) that the state courts which heard his case denied him federal due process because they refused to enforce his state right to have only properly notarized affidavits introduced into evidence against him in a criminal hearing.

---

2. In Texas the cases hold that after an accused has fulfilled the necessary procedural prerequisites to questioning jurors he can question jurors, and if he establishes any of the following facts, he is entitled to a new trial:

(1) The fact that during their deliberations the jury disobeyed the Court's instructions and considered the actual time a defendant would serve under a particular sentence, and while so considering the appropriate sentence, a juror incorrectly construes the law; and

(2) The fact that the jury discovered a co-defendant was convicted during another trial for the same offense. *See for example:* Meyers v. State, 418 S.W.2d 676 (Tex.Crim.App.1967); Jackson v. State, 157 Tex.Cr.R. 323, 248 S.W.2d 748 (1952); Price v. State, 150 Tex.Cr. R. 161, 199 S.W.2d 168 (1947); Moore v. State, 120 Tex.Cr.R. 215, 47 S.W.2d 619 (1932); *see also the cases cited in:* 24 C.J.S. Criminal Law § 1449(10), (12) (1961).

It is important to note what Procella does not allege. (1) He does not allege the *source* of the juror's improper knowledge about his co-defendant; and (2) He does not allege how this information prejudiced the jury's determination. In substance he is asking this Court to presume that the jury's verdict and sentence resulted automatically from their knowledge about his co-defendant's guilt. (3) He does not allege that there is any evidence of the misconduct available from any source other than the jurors themselves or from counsel's affidavit reciting what a juror allegedly told him.

■ Procella was not denied federal due process because the state trial judge refused to allow his counsel, Mr. O'Dowd, to subpoena or to fully question jurors during the hearing on his motion for a new trial.

■ It is clear that federal due process does not guarantee an accused the right to question jurors about their thought processes during their deliberations or to question them about matters known only to them and not susceptible to outside corroboration by other evidence. These evidentiary principles were first established by the United States Supreme Court in the cases of Mattox v. United States, 146 U.S. 140, 147–150, 13 S.Ct. 50, 36 L.Ed. 917 (1892); and Hyde v. United States, 225 U.S. 347, 384, 32 S. Ct. 793, 56 L.Ed. 1114 (1912).[3]

In the *Mattox* case the Court held that the federal District Court below erred by its refusal, during a motion for new trial, to admit into evidence juror affidavits admitting the jurors were exposed to potentially prejudicial matters not admitted into evidence during the trial—namely, the fact that the jurors read newspaper accounts of the trial which stated the evidence was against the accused, and the fact the jurors heard the Court's bailiff state that the accused had murdered other people.

The affidavits, however, did not disclose the effect which this material had on the juror's thought processes.

The high Court held that these affidavits did not violate the exclusionary rule that jurors could not be questioned about the influence or effect improper matters had on their collective or individual determinations of guilt or innocence. The Court then quoted from Perry v. Bailey, 12 Kan. 539, 545, to show the reasoning behind its decision.

Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony. It gives to the secret thought of one the power to disturb the expressed conclusions of twelve. Its tendency is to produce bad faith on the part of a minority; to induce an apparent acquiescence with the purpose of a subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. Mattox v. United States, *supra*, 146 U.S. at 148, 13 S.Ct. at 52.

In *Hyde* the Supreme Court again considered an attempt to impeach a jury verdict. Here, after trial, counsel for the defendants who were found guilty moved for new trial. Accompanying the motion was the affidavit of counsel stating that jurors and persons who had talked to jurors had told him that the jury verdict was the result of a compromise. Supposedly, the jurors were unable to agree upon a unanimous verdict as to all the defendants so they settled their differences by finding half the defendants guilty. Counsel further alleged that the jurors refused to sign affidavits on the advice of counsel.

The high court upheld the lower court's decision to deny the motion for new trial without receiving oral testimony. The Supreme Court held that juror testimony was inadmissible to prove

---

3. In 1785 Lord Mansfield, speaking for the English King's Bench, announced the rule that jurors would never be allowed to im- peach their own verdict. Vaise v. Delaval, 1 T.R. 11; 99 E.R. 944 (K.B.1785).

matters exclusively within the knowledge of the jurors and which was not capable of corroboration by the testimony of witnesses or the introduction of evidence which did not originate with the jurors themselves. Here, since only the jurors themselves could have knowledge of the compromise verdict, the court, in effect, held that the compromise verdict was not susceptible of being proven. Hyde v. United States, *supra*, 225 U.S. at 381–384, 32 S.Ct. 793; *see also*: Stein v. People of State of New York, 346 U.S. 156, 177–179, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953).

The evidentiary principles first developed in *Mattox* and *Hyde* have been reconsidered and upheld in numerous recent federal opinions. In these opinions the courts have prohibited defense counsel from impeaching jury verdicts by the use of juror testimony in the following situations: First, they have prohibited jurors from testifying about matters known only to them and incapable of proof by other sources. Examples of this would be when jurors compromised their views and agreed to exchange the innocence of one defendant for the guilt of another or when a juror misconstrued the court's instructions or disobeyed the court's instructions during the jury deliberations. Second, the courts have prohibited jurors from testifying about the effect of inadmissible evidence on their individual determinations of guilt or innocence. In the latter category of cases the fact that the jurors could have been exposed to inadmissible evidence was capable of proof by other non-juror evidence. *See for example*: Stein v. People of State of New York, *supra*; McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Cunningham v. United States, 356 F.2d 454 (5th Cir. 1966); cert. denied 384 U.S. 952, 86 S.Ct. 1573, 16 L.Ed.2d 548 (1966); United States v. Crosby, 294 F.2d 928, 948–950 (2nd Cir. 1961); cert. denied in Mittleman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962); Johnson v. Hunter, 144 F.2d 565 (10th Cir. 1944); United States v. Miller, 284 F.Supp. 220, 223–225 (D.Conn.1968); app. dismd. 403 F.2d 77 (2nd Cir. 1968); Bates v. Dickson, 226 F.Supp. 983 (N.D.Cal. 1964); 8 J. W. Moore, Federal Practice, Par. 31.08(1) (a), (2) (R. M. Cipes 2nd ed. 1969).

In United States v. Crosby, *supra*, the United States Court of Appeals for the Second Circuit carefully reexamined the *Mattox* opinion and then upheld the lower court's decision to deny a motion for new trial. The lower court had refused to hold an oral evidentiary hearing to ascertain the effect which the co-defendant's guilty plea had had on the jury's verdict. Several weeks after the trial had terminated, counsel for one of the defendants submitted an affidavit to the trial court reiterating a conversation he had had with a juror. The juror allegedly told counsel that during their deliberations the jury had read newspaper articles which contained information about the co-defendant's guilty plea (after the trial had started a co-defendant plead guilty out of the presence of the jury, and the jury was not informed of this fact during the trial), and then related to counsel that several of the jurors had stated their belief that this fact proved the defendant's guilt.

On appeal, counsel for the defendant urged that his affidavit presented prima facie proof that his client had been denied a fair trial, and that the trial court should have allowed him to question the jurors about the irregularities.

The appellate court reasoned that the jurors' statements about the effect which the co-defendant's guilty plea had on their verdict would violate the exclusionary rule of *Mattox* and therefore would be inadmissible. The court then assumed arguendo that the jury had heard of the co-defendant's plea and held that proof of this fact did not prove that the movants had been denied a fundamentally fair trial.

In Johnson v. Hunter, *supra*, the Tenth Circuit Court of Appeals followed the rationale enunciated in the *Mattox* and *Hyde* decisions when it affirmed the lower federal court's decision

to dismiss a habeas corpus petition on the pleadings for failure to state a "provable" claim.

The petitioner alleged that he had been denied a fair trial. He contended that the jury verdict was not the unanimous decision of all the jurors because the eleven white jurors coerced the one black juror to vote guilty.

The court in *Johnson* sustained the lower court's, reasoning that the petitioner's allegations of jury impropriety were not capable of being proven because the only relevant evidence was the inadmissible testimony of the jurors about their thoughts and conduct during deliberations. The court therefore affirmed the lower court's dismissal, denial of a certificate of probable cause and denial of an appeal in forma pauperis. *Id.* 144 F.2d at 567; *also see*: Stein v. People of New York, *supra*, 346 U.S. at 177–179, 73 S.Ct. 1077; Hyde v. United States, *supra*, 225 U.S. at 381–384, 32 S.Ct. 793, 56 L.Ed. 1114; 8 Moore, *supra*.

Using the rules enunciated in *Mattox* and *Hyde* as a standard to measure Procella's due process claims, it is clear he was not denied a fundamentally fair trial by the state judge's rulings. The only evidence which Procella was unable to develop during the hearing on his motion for new trial was testimony from jurors about the manner in which they allowed improper evidence to affect their determinations. There is no allegation that this impropriety could have been developed by evidence other than from the jurors themselves.

The state trial judge's decision to exclude this juror testimony would be permissible in a federal court, and was held to have been proper by the Texas Court of Criminal Appeals. Procella v. State, supra. This Court will not hold that Procella's federal rights are broader than those accorded an accused in a federal trial.

■ Since federal evidentiary rules govern federal habeas corpus hearings, they preclude this Court from considering the only evidence petitioner has tendered to prove jury misconduct. Since this evidence is inadmissible, it is clear that petitioner has not sustained his burden to prove that jury misconduct occurred during the deliberations of the state jury which found him guilty and sentenced him to life imprisonment.

Assuming arguendo, however, that the evidence on the record in this case would be admissible in a federal habeas corpus hearing, Procella still has not stated a meritorious habeas corpus claim.

■ Assuming arguendo that the jury which convicted Procella discovered the fact that Procella's co-defendant was convicted and sentenced to death, this fact alone cannot be assumed to have so prejudiced the jury's deliberations that this Court is compelled to ignore the evidence favorable to the State, and hold that petitioner was denied his federal due process rights to a fundamentally fair trial in state court.

■ Federal courts have uniformly held that an accused is entitled to have his case heard by a jury which has not been prejudiced against the accused by matters not properly admitted into evidence during the trial. These same cases, however, also recognize that an accused is not entitled to an error free trial, and that minor infractions of these rights will not deprive him of a fundamentally fair trial. In cases where: (1) one of the jurors was later discovered to be related to a prosecution witness; (2) one of the jurors was later discovered to be related to a victim of a crime similar to the one the accused was alleged to have committed; (3) one or more of the jurors learned that a co-defendant had plead guilty to or had been found guilty of and sentenced for his part in a similar crime; or (4) one or more of the jurors heard court personnel or other persons make prejudicial comments about the accused; the courts' found that the accused had not been denied his right to a fair trial. In *some* of these cases the court concluded that factors like those enumerated above did

not deprive the accused of a fair trial because: (1) the admissible evidence of guilt was overwhelming; (2) the jurors who were shown to be exposed to the prejudicial influences swore they were not prejudiced by these influences; and (3) the trial court had instructed the jury not to consider any matters not properly admitted into evidence. *See*: Gov. of Virgin Islands v. Bodle, 427 F.2d 532 (3rd Cir. 1970); Richard v. United States, 315 F.2d 331 (1st Cir. 1963); United States v. Crosby, *supra*; Fook v. United States, 82 U.S.App.D.C. 391, 164 F.2d 716, 717 (1947); cert. denied 333 U.S. 838, 68 S.Ct. 608, 92 L.Ed. 1122 (1948); Brant v. Scafati, 301 F.Supp. 1374, 1378–1379 (D.Mass.1969); Subilosky v. Scafati, 294 F.Supp. 18 (D. Mass.1968); Bertsch v. Beto, 254 F. Supp. .257, 262 (S.D.Tex.1966); *c. f.*: Barker v. Coiner, 306 F.Supp. 227 (D. W.Va.1969); Wade v. Jones, 192 F. Supp. 333 (W.D.Ky.1961).

Nothing in the record before this Court persuades it that Procella's claim is not governed by the cases cited above. The only evidence of jury impropriety is the affidavit of Procella's counsel and the unclear testimony of juror Gay. Even Gay, however, affirmed that he was not prejudiced against Procella by this knowledge. There is no other evidence in the record before this Court which shows that any other juror was actually prejudiced against petitioner by knowledge about Procella's co-defendant.

It would be unjust if this Court were now to presume that any juror who knew of the co-defendant's prior conviction and death sentence would be prejudiced against the petitioner by this fact. Instead, it could easily be presumed that the mention of death would so shock a juror that he would have been compelled to reevaluate the overwhelming evidence of Procella's guilt to see if he had missed any evidence favorable to the accused.

When the factors discussed above are coupled with the fact that the trial court instructed the jury not to discuss or to consider any matters not admitted into evidence, it is clear that the evidence in the record before this Court preponderates against any inference that the jury which convicted Procella could have been prejudicially swayed by the fact that his co-defendant was convicted and sentenced to death in a prior trial.

■ Assuming arguendo, that Procella can prove his assertion that several of the jurors disobeyed the court's instructions against computing the actual period of incarceration a prisoner would serve on a sentence they rendered, misconstrued the law, and voted to sentence Procella to serve life imprisonment believing he would serve a shorter incarceration than he will, he has not stated a meritorious habeas corpus claim.

Federal courts have consistently denied habeas corpus complaints predicated upon allegations that the trial court erroneously stated the relevant sentence law in his charge to the jury causing the accused to receive a longer sentence. Linebarger v. State of Oklahoma, 404 F.2d 1092, 1095 (10th Cir. 1968); cert. denied 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1969); Barker v. Coiner, 306 F.Supp. 227 (D.W.Va.1969); *see also*: Ortiz v. Baker, 411 F.2d 263 (10th Cir. 1969); *c. f.*: Coleman v. Koloski, 415 F.2d 745 (6th Cir. 1969). These cases are based upon the theory that an erroneous charge on punishment does not deny an accused his federal due process right to a fundamentally fair trial because the decision on guilt or innocence is presumptively not affected by this error. *Id.* The cases reason that errors in charges are regrettable *but* beyond the scope of federal habeas corpus to correct and are sole issues of state law. *Id.*

Procella's allegation of error is governed by these cases. It is inconceivable to believe that an erroneous jury charge —presumptively heard by the entire panel—could be more prejudicial to an accused than the regrettable fact that several jurors misconstrued the law of punishment. In fact, this case is less severe because the Court must presume

that most jurors would obey the trial court's instructions and, if they heard someone discuss the actual length of service, ignore it. Hilliard v. State of Arizona, 362 F.2d 908, 910 (9th Cir. 1966); Cohen v. United States, 297 F.2d 760, 764 (9th Cir. 1962). Here there are also the five unrebutted affidavits of jurors who state they did not consider the actual service upon any sentence they considered.

Procella's last contention is also without merit. Procella asserts that he was denied federal due process because the state courts which heard his case did not enforce his state right to have only properly notarized affidavits introduced into evidence against him in a criminal hearing. In substance, his claim is that because the juror affidavits taken and notarized by the Assistant District Attorney were void, they could not be considered as evidence to rebut his prima facie showing of jury irregularity. Therefore he says he fulfilled the conditions precedent to impeaching the jury by their own testimony under Texas law, and the trial court's denial of his right to question them was incorrect.

In Texas, as a general rule, affidavits which are notarized by the counsel offering them into evidence are void. Melton v. State, 78 Tex.Cr.R. 539, 182 S.W. 289, 290 (1916). The Court of Criminal Appeals, however, on petitioner's motion for rehearing held, in substance, that the fact the state's affidavits were improperly notarized was harmless error because juror Gay corroborated the facts in his affidavit and therefore rebutted Procella's attempts to fulfill the Texas prerequisites for calling jurors to testify about their deliberations. Procella v. State, *supra*, 395 S. W.2d at 639–640.

Assuming arguendo that the Texas Court of Criminal Appeals denied petitioner's *absolute* right to have only properly notarized affidavits, regardless of whether their substance is correct, introduced into evidence against him, Procella has not asserted a federal claim for relief.

Habeas corpus does not lie to correct all state procedural errors. Rather, a federal District Court's powers in habeas corpus are limited to correcting state procedural errors which also abrogate an accused's rights to receive the federal protections guaranteed in the fourteenth amendment to the United States Constitution.

The guarantees of due process and equal protection of the law contained in the fourteenth amendment are not violated because a state incorrectly denies a person a state right, but by so abrogating the state right does not abrogate a federal right. Sims v. Lane, 411 F.2d 661, 666 (7th Cir. 1969); United States ex rel. Laino v. Warden of Wallkill Prison, 246 F.Supp. 72, 78 (S.D.N.Y. 1965); affd. 355 F.2d 208 (2nd Cir. 1966). Federal rights to a fair trial are denied only when the conduct complained of is so fundamentally unfair that the conduct complained of can be said to shock the conscience of the English speaking peoples, *c. f.*: Palko v. Conn., 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), or is conduct which has been held to be presumptively violative of the fourteenth amendment. The use of improperly notarized affidavits does not fall into this latter class of procedural irregularities. Furthermore, the use of improperly notarized affidavits not shown to be factually incorrect did not deny Procella a fundamentally fair trial. Williams v. Wainwright, 414 F.2d 806 (5th Cir. 1969); *c. f.*: United States ex rel. McCray v. Rundle, 422 F.2d 354 (3rd Cir. 1970); Williams v. Wainwright, 308 F.Supp. 81 (D.Fla.1969).

Therefore, for the reasons stated above, it is Ordered that: (1) the petition for habeas corpus is denied and (2) the Clerk shall send copies of this Memorandum Opinion and Order to counsel.