## FOOK v. UNITED STATES.

### No. 9528.

United States Court of Appeals
District of Columbia.

Argued Oct. 14, 1947.

Decided Nov. 19, 1947.

Writ of Certiorari Denied Feb. 16, 1948.
See 68 S.Ct. 608.

Mr. Woodrow E. Faulkner, of Washington, D. C., for appellant.

Mr. John D. Lane, Assistant United States Attorney, of Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and Edward Molenof, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, Associate Justice, MARIS, Circuit Judge, and PRETTYMAN, Associate Justice.

PER CURIAM.

Appellant Lee Fook has been convicted of deliberate and premeditated murder and sentenced to death. His guilt is clear. The crime was committed in broad daylight on a busy public street. Testimony of several disinterested witnesses showed that appellant, carrying a knife, pursued the deceased, Harry Lee, several hundred feet; that Harry Lee fell; and that appellant kicked and stabbed him many times as he lay on the ground. The pursuit and stabbing occupied four or five minutes. Death was caused by several punctures of the liver. While appellant was standing beside the body he was asked why he did it and replied that the man

was a son of a bitch. Harry Lee was unarmed during the pursuit and stabbing, but a knife was found resting loosely in the left hand of his apparently lifeless body and there was testimony that appellant put it there. Some days before the stabbing appellant had said to Harry Lee "I am going to get you next time." After the stabbing appellant had a slight cut or scratch on his hand.

Testifying through an interpreter, appellant said he went to Harry Lee's laundry to see him about an immigration paper for appellant's son; that Harry Lee had sold this son a "citizenship paper" but refused to help appellant get the son, who was in a New York hospital, back to China; that appellant said to Harry Lee "I am going to report to the immigration authorities"; that Harry Lee's "face changed color, and then he snatched a knife and came after me * * * and I grabbed for him, and I got cut right here (indicating on hand) * * *. And when he cut me, I don't know how I do it, I try defend myself, and after I couldn't do it, I ran outside, and the deceased was chasing me. * * * When he came at me with his knife, I defended myself and try to hold him off with this hand, and that is when I got cut, and maybe when I did this, knocked the knife into him, and I got scared and ran out." Two of Harry Lee's employees testified in rebuttal that they were familiar with his place and his equipment but had never seen the paring knife with which he was killed. Whatever may have happened before the men went from the laundry into the street, no reasonable jury could fail to believe the disinterested witnesses who saw appellant pursue his victim through the street and stab him repeatedly.

■ We find no error. Appellant complains of the court's comment, "I think it is a plain inference that he must have been mad at him. * * * He must have been angry, if he threatened to denounce him to the immigration authorities. * * *" But the court added: "As you know, I have a right to comment on the facts. My inference is not binding on the jurors. * * * They can draw their own inference." Moreover, the theory that appellant might have acted in the heat of passion was favorable to him. It had been urged by the defense, and was afterwards adopted by the court, as the basis for a manslaughter charge. Although there was blood on the victim's shirt while he was running away from appellant, the court did not err in refusing to give a charge based on the theory that "the fatal blow," i. e. the only fatal blow, was struck in the laundry. For no one could reasonably infer from the evidence that death was caused by the one accidental cut which appellant says he "maybe" inflicted there and not by any of the numerous intentional cuts which he certainly inflicted in the street several minutes later.

■ There was neither error nor prejudice in the court's refusal to grant a continuance for the purpose of enabling counsel to go to New York to get evidence regarding the cause of appellant's hostility to the deceased. That sort of evidence was insignificant and probably inadmissible. Moreover an adjournment which took place for other reasons gave counsel, as he conceded at the trial, ample opportunity to get this evidence if he cared to do so.

■ There was no error in disposing of unrelated criminal business, in the absence of the jury, during a recess in the trial. There was no error in charging the jury that if they believed appellant put the knife in Harry Lee's hand they might, if they thought fit, regard that attempt to manufacture evidence as showing consciousness of guilt. We find no basis for appellant's contention that the charge to the jury was "one-sided." We think the charge was clear, well expressed, and eminently fair to the appellant. Justice Holtzoff conducted the entire trial with the fullest regard for appellant's rights. An example of this was his readiness to have appellant's sanity tested when the issue was raised for the first time in mid-trial. He did not abuse his discretion in declining to grant a new trial when he learned that a juror had overheard but had not been influenced by a remark of the interpreter, during a recess, to the effect that appellant was lying.

Affirmed.