**Claude B. MORGAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 25159.**

United States Court of Appeals Fifth Circuit.

Aug. 23, 1968.

Rehearing Denied Oct. 16, 1968. Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 635.

Joe J. Harrell, Pensacola, Fla., for appellant.

Clinton Ashmore, U. S. Atty., Stewart J. Carrough, Asst. U. S. Atty., Tallahassee, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Summoning as we must our most perceptive antennae to detect prejudicial communications with a juror, we nevertheless affirm the trial court's findings that the jury was not compromised.

The appellant, Claude B. Morgan, appeals from an order of the district court denying a motion for new trial based on an alleged prejudicial communication between a stranger to the proceedings and a juror. Morgan was tried by a jury and found guilty under an indictment charging him with violations of 18 U.S. C. Sec. 1341. The substance of the charge was that Morgan used the mail to defraud persons interested in obtaining income as handicraftsmen in their homes.

Four days after the jury had returned its verdict against Morgan, defense counsel filed with the court a motion for new trial and a supporting affidavit of Robert W. Bryant, a long-time friend of Morgan. Bryant had been subpoenaed as a defense witness at the trial but had never been called to the stand. Both in his affidavit and at a hearing held by the trial judge, Bryant testified that on the last day of Morgan's trial during the noon recess and before the jury had retired to deliberate the verdict, he had overheard a conversation in the lobby between one of the jurors in the Morgan case and another member of the jury panel who was not sitting in the Morgan case, but who was serving as a juror in another case being tried the same day. According to Bryant, the non-Morgan juror told the Morgan juror that "the Spanish fellow" on the Morgan jury had also been a juror in a civil case three years earlier brought by Morgan against an insurance company in which Morgan had recovered $100,000. Bryant testified further that the non-Morgan juror had stated, "You know there must be thousands like himself (sic) defrauding the people today," to which the Morgan juror had allegedly replied that Morgan would not be defrauding anybody else. The obvious implication of the statement was that the juror had already determined the guilt of Morgan, perhaps on the basis of the communication, prior to deliberation in the jury room.

Upon being informed of the alleged communication, the trial judge reconvened the entire panel of jurors in order that Bryant might be given an opportunity to identify the participants. Although Bryant did point out Frank E. Blews as the non-Morgan juror, he was unable to select the Morgan juror even though he confronted each member of the panel individually. Blews, after being questioned by the trial judge, admitted that on the day of the trial he "might have discussed" with another juror the fact that he had served on the jury in the civil case in which Morgan recovered a substantial sum against an insurance company. Blews also testified that he did not know whether the person to whom he addressed his remarks was a juror on the Morgan case or not.

The Morgan jurors were examined separately by the trial judge and each denied that he had ever been involved in any conversation in which it was mentioned that Morgan had defrauded anyone. One juror, Calvin L. Valcour, was aware of the $100,000 recovery by Morgan from the insurance company, not because he had learned such in any conversation but because he too had served on the civil jury in that case. Valcour was apparently the "Spanish fellow" allegedly referred to by the non-Morgan juror, presumably Blews.

One other juror, Leo A. Duncan, testified that four days after the verdict had been rendered in the criminal case, he had asked Frank Blews why he (Blews) had been excused from serving on the Morgan criminal jury. Blews had told him that the reason for his being excused was that he had served on the prior civil jury. Duncan and Blews both, however, denied that their conversation concerned any attempt by Morgan to defraud anyone.

In denying the motion for new trial the trial judge stated in his findings:

"There was a flat and categorical denial by each and every juror that he had heard anything whatsoever with respect to the matters contained in the witness Bryant's affidavit or statement in court. The total failure of identification by this defendant (sic) of any juror alleged to have participated in a conversation in itself requires a denial of the motion. The flat and uncontradicted testimony of the jurors themselves leads this Court to find affirmatively as a matter of fact that *there was no such conversation*." (Emphasis added.)

On July 21, 1967, this Court vacated the district court's order with directions for additional findings of fact and especially for a clarification of the above language. Morgan v. United States, 5

Cir. 1967, 380 F.2d 915. It was clear from the record, for example, that some conversation had taken place between a Morgan juror (Duncan) and a non-Morgan juror (Blews) concerning the suit against the insurance company. Thus, a further finding was necessary to ascertain whether the alleged conversation had occurred before or after the verdict was rendered and whether the trial judge actually meant to hold that the conversation was non-prejudicial.

On remand, the trial judge amended his findings to read, "There was no such *prejudicial* conversation as contended by the defendant in support of his motion for new trial." The trial judge further explained that what he meant when he initially found that there had been "no such conversation" was that the allegedly prejudicial portion of the conversation —attributing fraud to Morgan—had never taken place at any time. The court continued:

"The most that can be stated in support of this defendant's motion for new trial as developed after full hearing was that Bryant, a prospective character witness for the defendant on trial, testified that he heard a non-Morgan juror tell a Morgan juror that another person then on the Morgan jury also had been a juror in a civil case previously brought by Morgan against an insurance company in which Morgan had received $100,000. (Morgan v. Badger Mutual Insurance Company, et al., Pensacola Civil Action No. 965, Northern District of Florida.) According to Bryant's affidavit and his testimony the non-Morgan juror further stated, 'You know there must be thousands like himself defrauding the people today,' and the Morgan juror then stated he would not be defrauding anybody else. It was this conversation that this Court referred to in its initial findings of fact and which gave rise to its truncated observation that 'there was no such conversation.' Specifically, the Court finds that no Morgan juror heard the alleged statement, 'You know there must be thousands like himself defrauding the people today,' or any words indicating that he, meaning Morgan, wouldn't be defrauding anybody else.

"Upon the record as a whole the Court rejects the testimony of Bryant in this regard. There was, indeed, a conversation in which Morgan's name was mentioned, as all the evidence shows, between a Morgan juror, Duncan, and a non-Morgan juror, Blews, and the Court so finds this to be a fact. The Court finds, however, that the conversation between Duncan and Blews was concerned solely with Blews' statement to Duncan that he was not called on the present Morgan case because he, Blews, had served as a juror in an earlier case in which Morgan was the plaintiff. Both Blews and Duncan specifically denied that there was any conversation between them *at any time* attributing to the defendant Morgan fraud or attempted fraud or any other derogatory statement which might tend to prejudice. The Court finds their testimony totally credible in this regard and accepts their testimony as the truth of the nature and content of the conversation between them. While it is not at all necessary to the Court's making the foregoing finding of fact, this determination of credibility of the Blews-Duncan testimony is buttressed by one additional observation. Judicial notice is taken from the official court records that Blews was a juror on the earlier Morgan civil trial. (Morgan v. Badger Mutual, PCA-965), and, also, that this jury rendered a verdict *in behalf of* the plaintiff Morgan for $35,400. It seems highly unlikely that Blews would award a verdict for Morgan for a substantial sum of money, and thereafter, make statements attributing fraud to Morgan such as Bryant contended. The Court concludes, as it did on the original findings, that there was no conversation with prejudicial context involving any juror during the trial of this case. Upon review, and with the amplifications set forth here, this finding and conclusion is reiterated. This being the case, no finding was made as to the time of the conversation between Blews and Duncan. Since the conversa-

tion between them was found to be completely innocuous and devoid of any prejudice to the defendant on trial, the date and hour of this occurrence is deemed irrelevant. Out of an abundance of caution and desire to be fully responsive to the Court of Appeals, however, this Court has carefully reviewed all of the testimony with respect to the time of conversation between Duncan and Blews. Morgan's witness, Bryant, was quite emphatic in placing the conversation on November 4 at a time prior to the jury's having rendered its verdict. The juror, Duncan, was equally emphatic in placing the time of his conversation with Blews on Monday, November 8, some three days after the jury had rendered its verdict. Blews, after considerable indecision on the point finally set the date, as best he could remember it, November 4.

"Upon this testimony the Court concludes that the testimony of the juror, Duncan, in all particulars is more credible when considered with the evidence as a whole, and finds as a matter of fact that the conversation between him and Blews, the character of which has already been delineated, occurred Monday, November 8. It is the essential core of this Court's conclusion, however, that the conversation between Duncan and Blews was non-prejudicial and even if the conversation between them had occurred on November 4, during a recess of the trial and prior to verdict there is nothing from this record as a whole which would require the granting of a new trial."

The essence of trial purity was captured by Justice Holmes in Patterson v. People of State of Colorado, 1907, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879, 881 when he said:

"The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."[1]

The responsibility of the trial judge when allegations of jurors misconduct arise, was summarized in Remmer v. United States, 1954, 347 U.S. 227, 74 S. Ct. 450, 98 L.Ed. 654:

"In a criminal case, any private communication, contact, or tampering, directly or indirectly with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. Mattox v. United States, 146 U.S. 140, 148–150, 13 S.Ct. 50, 52–53, 36 L.Ed. 917 [920, 921]; Wheaton v. United States, 8 Cir., 133 F.2d 522, 527.

"We do not know from this record, nor does the petitioner know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless. The sending of an F. B. I. agent in the midst of a trial to investigate a juror as to his conduct is bound to impress the juror and is very apt to do so unduly. A juror must feel free to exercise his functions without the F. B. I. or anyone else looking over his shoulder. The integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action *ex parte* on information such as was re-

---

1. The continuing vitality of this principle, and its effect on other constitutional guaranties, is dramatically illustrated in three recent Supreme Court decisions. Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; Estes v. State of Texas, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, reh. den., 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118; and Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751.

ceived in this case, but *should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.*" Remmer v. United States, 347 U.S. at 229–230, 74 S.Ct. at 451. (Emphasis added.)

■ The record in this case shows that the trial judge was keenly aware of his responsibility as promulgated in *Remmer* and that he used every possible means to ferret out the truth. The investigation of the charges in the affidavit included: (1) a full hearing at which counsel were free to introduce any evidence relevant to the alleged conversation; (2) separate questioning of each juror by the trial judge; (3) cross-examination of the panel members by counsel; and (4) review of the civil litigation in which Morgan recovered the $100,000. We can reach no other conclusion than that the trial judge was diligent in the exercise of his office. United States v. Dardi, 2 Cir.1963, 330 F.2d 316, 332, cert. den., 1964, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50; Mee v. United States, 8 Cir.1963, 316 F.2d 467, 468–469; United States v. Crosby, 2 Cir.1961, 294 F.2d 928, 949–950, cert. den., 1962, Mittleman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523; United States v. Flynn, 2 Cir.1954, 216 F.2d 354, cert. den., 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713; and Fook v. United States, 1947, 82 U.S.App.D.C. 391, 164 F.2d 716, 717. Cf. Parker v. Gladden, 1966, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420; Remmer v. United States, supra; Richardson v. United States, 5 Cir.1966, 360 F.2d 366, 369; and United States v. Gersh, 2 Cir.1964, 328 F.2d 460.

■ Moreover, the extremely thorough Supplemental Findings of Fact and Conclusions of Law have resolved all prior doubts concerning the court's rationale in refusing to grant a new trial.[2] Even if we were to question, which we do not, the trial court's weighing of the facts we would be restrained by the well established rule: "[W]hat is prejudicial to a fair trial when the issue of 'juror misconduct' is raised, is a matter that must, to a large extent, be left to the discretion of a trial court and that an appellate court will not reverse the determination of that court on such an issue unless it is established as clearly erroneous. Mattox v. United States, 146 U.S. 140, 147, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. United States, 133 F.2d 522 (8 Cir.1943); United States v. Flynn, 216 F.2d 354 (2 Cir.1954); Holmes v. United States, 284 F.2d 716 (4 Cir. 1960)." Little v. United States, 8 Cir. 1964, 331 F.2d 287, 295, cert. den., 379 U.S. 834, 85 S.Ct. 68, 13 L.Ed.2d 42. See also United States v. Miller, 2 Cir. 1967, 381 F.2d 529, 539–540 and Bacino v. United States, 10 Cir.1963, 316 F.2d 11, cert. den., 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62.

■ We believe that the trial judge has discharged to the fullest his high responsibility to assure that the jury was, unlike Caesar's wife, above suspicion. It follows inevitably therefore that his findings are not "clearly erroneous."

Affirmed.

2. During oral argument in this appeal counsel for appellant attempted to disprove the trial court's Supplemental Findings by showing that Bryant's affidavit was filed on November 8, the same day that the court found the non-prejudicial conversation to have occurred. From this fact, counsel argued that that same conversation must have occurred before November 8 and that, because the Supplemental Findings recognized no such earlier conversation, they must be reversed. We find this syllogism deficient on two points. First, the conversation could have taken place on November 8 and the affidavit filed later the same day. The finding was thus not inconsistent with the facts. Second, the trial court expressed little if any faith in the credibility of Bryant. We cannot say, therefore, that the date of Bryant's affidavit renders the Supplemental Findings clearly erroneous.