Donald Edward ALLEN

v.

UNITED STATES of America.

Civ. A. No. 73-1470.

United States District Court,
E. D. Pennsylvania.

June 4, 1974.

Stephen P. Gallagher, Philadelphia, Pa., for plaintiff.

Gilbert J. Scutti, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Presently before this Court is petitioner Donald Edward Allen's amended motion to vacate sentence and grant a new trial under 28 U.S.C. § 2255.

We set forth the following facts by way of background. Donald Allen and John O'Brien were each charged with bank robbery and each was tried before a judge and jury. The trial commenced on May 30, 1972 and continued through June 7, 1972. Each defendant was found guilty on all four counts of the indictment and each was sentenced to twenty (20) years imprisonment on count four of the indictment. Defendants thereafter appealed to the United States Court of Appeals for the Third Circuit which Court affirmed the lower court in a Judgment Order dated March 23, 1973. Petitioner thereafter petitioned the Supreme Court of the United States for a writ of certiorari which petition was denied on October 9, 1973. [414 U.S. 845, 94 S.Ct. 108, 38 L.Ed.2d 92] Thereafter, on or about June 15, 1973, petitioner filed his pro se motion to vacate sentence pursuant to Section 2255 of Title 28 U.S.C. in the above captioned action. On July 12, 1973, the Honorable Tullio Gene Leomporra ordered the United States Attorney to file an answer to petitioner's motion within twenty (20) days from the date of his order. On August 1, 1973, the United States was granted an additional thirty (30) days in which to answer said motion. On September 10, 1973, the government responded to petitioner's motion. On November 14, 1973, we ordered that petitioner be permitted to proceed in forma pauperis, that counsel be appointed to represent petitioner and that petitioner shall have thirty (30) days to file an amended motion to vacate sentence pursuant to Section 2255 of Title 28, United States Code, prior to our ruling on the necessity of holding an evidentiary hearing. On March 11, 1974, we directed that an evidentiary hearing be held on March 19, 1974 at 2 p. m. Said hearing was continued to April 2, 1974 at 2 p. m.

Petitioner's Section 2255 motion is grounded on the question of whether or not petitioner received a fair trial by an impartial jury as the Sixth Amendment commands. Petitioner asserts that several events occurred during the course of his trial which caused the jury to be subjected to certain influences which were prejudicial to his case. We will deal with his contentions separately.

Petitioner's most significant claim of prejudice arises from the following incident. On the fifth day of trial, June 5, 1972, one member of the jury, Mr. John P. Myers, was approached by a spectator in the courtroom and they became engaged in conversation. The substance of the conversation in part related to the pending criminal trial of the petitioner. The spectator, a Mr. James McGee, stated that he told the juror in his conversation with him outside the courtroom entrance that he knew the defendant John O'Brien who was being tried as a co-defendant for the same offense as was petitioner. Mr. McGee also stated to the juror that he wanted to be a witness for defendant O'Brien because he was with him on the day of the alleged robbery and defendant O'Brien was not near the bank in question but that he could not swear to it from the witness stand. Thereafter the two parted.

Unbeknownst to either Mr. McGee or juror Myers, the event was observed by officer Joseph Grant who overheard portions of the conversation between Mr. McGee and juror Myers. Officer Grant related what he had seen and heard to then Assistant United States Attorney Thomas J. McBride who immediately brought the incident to the attention of the Court in the presence of defendants and their counsel but out of the presence of the jury. Thereafter,

the Court with the agreement of all counsel, brought Mr. McGee into the anteroom adjoining the courtroom, swore him and questioned him regarding the alleged conversation. Defendants and all counsel were present for the questioning. Mr. McGee related to all present that he had in fact spoken to juror Myers about the pending case and stated that he had told juror Myers that he wanted to be a witness for Mr. O'Brien because on the particular day of the alleged robbery, he, Mr. McGee, was with defendant O'Brien but that he could not remember enough of the facts to swear to it in open court. Mr. McGee also indicated that he had not had any conversations with any jurors other than juror Myers and that there were no other jurors in the vicinity during the conversation. Mr. McGee then left the anteroom and after a short discussion, it was agreed that juror Myers would be brought into the anteroom and questioned to obtain his version of the conversation and to ascertain whether or not he had spoken to any of the other jurors about his conversation with Mr. McGee.

Juror Myers was brought into the anteroom and questioned by the Court. Juror Myers stated in essence much of what Mr. McGee related to the Court during his questioning except that juror Myers was sure that Mr. McGee was referring to defendant Allen during the conversation and not defendant O'Brien. Juror Myers stated that after he had conversed with Mr. McGee, he went back to the jury room and forgot what Mr. McGee had told him. He stated that he did not discuss any part of his conversation with any of the other jurors, and although some other jurors may have been in the vicinity during the actual conversation itself, juror Myers doubted very much that any other juror had seen or heard the conversation which took place. The Court then admonished juror Myers for not having brought this to the Court's attention and removed him from the jury with counsel's approval. Mr. McGee was escorted from the courthouse.

The Court stated at that time that it was reasonably satisfied that Mr. McGee had not talked to any other jurors and that juror Myers had not communicated with any other members of the jury concerning this matter. The trial was thereafter reconvened and alternate number one was substituted for juror number twelve. No reason was given for the removal of juror Myers in order that no further possible contamination occur in the presence of the jury.

Petitioner argues that the Court erred by failing to examine the other members of the jury either as a group or individually, to ascertain whether or not any other juror had overheard the conversation which occurred between Mr. McGee and juror Myers or whether or not Mr. McGee had talked to any other juror regarding the case.

■ Several aspects of this incident must be considered to determine whether or not any prejudice occurred as a result of the Court's handling of this event.

The law is clear that in a criminal case,

". . . [A]ny private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656 (1954).

The petitioner is correct in stating that the conversation between Mr. McGee and juror Myers is presumed to be prejudicial to the petitioner's case. The presumption remains in effect until such time as the government is able to establish that the contact was not prejudicial

to the defendant's interest. If the contact is not prejudicial, then there is no violation of the Sixth Amendment right to a fair and impartial jury.

■ Also, the Court must apprise the defendant of the fact of any private communication and must take evidence concerning the identity of those involved and the nature and extent of the communication. Normally the participants would be questioned as to the content of the communication, who was present and who overheard the communication. However, the approach taken by the trial judge in a given case is left to his discretion. See Morgan v. United States, 399 F.2d 93 (5th Cir. 1968) and the cases cited therein.

A reading of those cases cited by petitioner which involved an "unauthorized" communication with a juror and a third party indicate that the circumstances surrounding the communication dictate what tack the court took in attempting to get at the question of whether or not the communication was prejudicial and if so, to whom was it communicated. In the *Morgan* case, cited above, one of the defendant's friends, a Mr. Bryant, who had been in court during the entire trial, reported that he had overheard a conversation between one of the jurors and another person not on the Morgan jury but in the panel regarding the pending trial. The Court, after determining that the conversation as related by Mr. Bryant was in fact prejudicial to defendant Morgan reconvened the entire panel of jurors in order that Mr. Bryant be given an opportunity to identify the participants to the conversation. Mr. Bryant could only identify the non-Morgan juror, Mr. Blews, but was unable to point out the Morgan juror. Blews related that he might have discussed with another juror the fact that he had served on the jury in the civil case in which Morgan recovered a substantial sum against an insurance company. Blews did not know whether the person to whom he addressed his remarks was a juror on the *Morgan* case or not.

The trial judge then examined each individual juror to determine which juror or jurors, if any, had been involved in a conversation regarding Morgan's civil case. One juror indicated that he knew about the civil verdict but had not engaged in any conversation regarding same with Blews. Another juror stated that 4 days after the verdict, he had asked Frank Blews why he had been excused from the criminal jury. Blews had told him that he was dismissed because he had served on the Morgan civil jury. Both Blews and Duncan denied that their conversation concerned any attempt by Morgan to defraud anyone.

The *Morgan* case was remanded for clarification of one of the trial court's findings of fact on defendant's motion for a new trial. The trial court amended its findings to say that there had been no prejudicial conversation between the Morgan juror and the non-Morgan juror.

The *Morgan* case is a good example of how a particular incident should be handled to avoid possible prejudice in a given case.

■ The facts in the instant case, however, do not require this Court to do exactly what was done in the *Morgan* case. The trial judge in *Morgan* had to interview all of the jurors in order that the identity of the juror with whom Blews conversed be established. In the instant case, we were able to establish the identity of the parties to the conversation at the outset and we determined after extensive questioning and cross-examination in the presence of defendants and their counsel that even if the conversation was prejudicial, no other members of petitioner's jury had overheard it. In so concluding, we had hoped to exorcise the contaminated juror from the jury without contaminating the entire group in the interest of judicial economy. We dismissed the juror from further service without giving any reason therefore and replaced him with alternate No. 1. However, as we will point out shortly, there may well have been no need to replace juror No. 12 because the

conversation was not prejudicial. Also, we point out at this point that the procedure followed by most courts in questioning each individual juror where the allegation centers around a prejudicial newspaper article is not apposite to cases of "unauthorized" communication because the question in those cases is initially who, if anyone, has read the article.

The Court in its attempts to be abundantly careful dismissed juror No. 12 even though it may not have been necessary to do so. The substance of the conversation itself would appear to have helped the petitioner rather than prejudice him. Mr. McGee said nothing petitioner. The reasonable interpretation of Mr. McGee's statement would tend to inject further doubt as to petitioner's guilt and would not tend to be to inculpate either of the defendants and his statement tended to exculpate the detrimental to the juror's view of the case. Obviously even if the other jurors overheard the conversation, they would not have been prejudiced either. No one testified as to Mr. Allen's whereabouts on the day of the robbery so that the McGee communication did not contradict any witness' statement in that respect. The communication did not therefore tend to impeach the credibility of any witnesses other than those of the prosecution. It is our opinion, therefore, that the substance of the conversation between Mr. McGee and juror Myers did not include matters which would prejudice the defendant's case in any way.

The other two incidents do not require as thorough an explanation and can be dealt with in a single explanation. Each incident involved a bomb scare, one real and one a practical joke. The actual bomb scare did occur during a recess of the trial of the case. Apparently, the security force in the courthouse had information that a bomb had found its way to the sixth floor of the courthouse via the briefcase of a female observer of another trial. The security force walked into the courtroom in which the above case was pending and in view of most of the jury asked Mrs. Allen, petitioner's wife, if that was her briefcase in which the alleged bomb was placed. Mrs. Allen said that it was not her briefcase and the security guard continued with "Are you sure?" Mrs. Allen said she was sure and the matter was dropped.

The second bomb incident occurred outside the courtroom the day after the actual bomb scare described above took place and involved again Mr. James McGee. It seems that Mr. McGee was joking around in the corridor outside the courtroom with a bicycle inner tube box stating that he had a bomb "in here" and tapping it. Some jurors were out in the hall apparently watching McGee's antics.

Defendant asserts that both of these bomb scare incidents resulted in prejudice to his case. The second scare involving McGee could not have been harmful to petitioner's case and we reject his contention that it was so. There is absolutely no evidence to support any finding of prejudice with respect to such incident.

The bomb scare involving Mrs. Allen could have been prejudicial if Mrs. Allen had testified on an important point for her husband such as alibi but she did not. The case certainly did not rise or fall on her testimony as the record adequately indicates. The jurors' views of her credibility would not have prejudiced petitioner's case because her testimony although it certainly favored her husband, did not, even if believed completely, exculpate him from the commission of the crime. Again the standard of whether or not prejudice has occurred is left to the sound discretion of the trial judge and we are convinced that this petitioner received a fair trial before an impartial jury.