**UNITED STATES of America, Plaintiff,**

v.

**Jay BALL, Defendant.**

**No. CR–2–81–9.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

April 29, 1981.

On Motion for Continuance May 6, 1981.

On Admissibility of Evidence
May 22, 1981.

On Motion to Discharge Juror
May 22, 1981.

On Discharge of Juror During Deliberations
May 27, 1981.

On Motion for New Trial June 16, 1981.

Guy W. Blackwell, Asst. U. S. Atty., Greeneville, Tenn., for plaintiff.

W. Gordon Ball, Newport, Tenn., and A. Benjamin Strand, Jr., Dandridge, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The defendant moved pretrial, " * * * pursuant to T.C.A. [§§] 40–2044, 40–2441, and the due process clause of the *Fourteenth Amendment of the United States Constitution, Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) * * *," for an order requiring certain discovery of the prosecution. Such motion lacks merit and hereby is

DENIED.

 The aforecited provisions of the Tennessee Code Annotated provide no authority for discovery in a United States District Court. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and its progeny created no right of federal pretrial discovery.* *United States v. Moore,* C.A. 6th (1971), 439 F.2d 1107, 1108; *see Weatherford v. Bursey* (1977), 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30, 42[6]; *United States v. Clevenger,* D.C. Tenn. (1978), 458 F.Supp. 354, 356[3].

## ON MOTION FOR CONTINUANCE

A grand jury on April 6, 1981 returned a 10-count indictment against the defendant

---

* The defendant also appears to rely in support on Rules 12(d)(2), 16, Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, and Rules 803(24), 804(b)(5), Federal Rules of Evidence. Such reliance is obviously misplaced.

Under Rules 12(d)(2) and 16, *supra* his requests should have been directed to the United States attorney of this district, and not to the Court. *United States v. Tennyson,* D.C.Tenn. (1980), 88 F.R.D. 119, 120[1]; *United States v. Clevenger, supra,* 458 F.Supp. at 357[4], 356[2].

The Jencks Act, 18 U.S.C. § 3500, does not authorize any pretrial discovery but actually limits information that might otherwise be discoverable. *See United States v. Carter,* C.A. 6th (1980), 621 F.(2d) 238, 240[1, 2]. Rules 803(24), 804(b)(5), *supra,* have nothing to do with pretrial discovery. If the prosecution intends to seek the introduction of evidence under either such rule, it must show that the required notice was given.

Mr. Jay Ball who was at all times pertinent hereto under the supervision of probation officers of this Court, charging that on or about certain dates alleged in each count thereof and within the jurisdiction of this Court he sold certain described motor vehicles which were parts of and constituted interstate commerce, when he knew each such motor vehicle was stolen. *See* 18 U.S.C. § 2313. In the absence of his retained counsel, who was then engaged in a protracted criminal trial in the Middle District of Tennessee, Mr. Ball appeared on April 16, 1981 for arraignment on such indictment. The Court entered his pleas of not guilty to each such count and assigned trial thereon, as requested by his counsel, to commence Monday, May 18, 1981. It was estimated then that such trial would require 5 days.

After the conclusion of the aforesaid trial in the Middle District of Tennessee, the motion of the defendant for certain discovery was denied. *See* memorandum opinion and order herein of April 29, 1981, 547 F.Supp. 931. He moved on May 6, 1981, 547 F.Supp. 931, for a continuance of trial, and in such motion suggested that the trial will require 2 weeks, as opposed to 5 days; the defendant's attorney asserted therein also that he lacks adequate time to prepare a defense for his client, specifically because "the discovery material [will] not be available until the 11th day of May, 1981." The defendant also moved for subpoenas to issue and be served at government-expense on certain named witnesses.

Furthermore, the Court is advised informally that the respective attorneys for the government and this defendant are in discussion of a possible plea-agreement. Rule 11(e), Federal Rules of Criminal Procedure. There was no notification to the Court, of the existence of any such agreement at the arraignment of the defendant; although no other time, prior to trial, was fixed by the Court for pretrial motions, etc.; and good cause has not been shown for the failure of the required notification, *see* Rule 11(e)(5), Federal Rules of Criminal Procedure.

It was requested informally also on May 6, 1981 that disclosure of the agreement be made in open court on May 7, 1981, at which time neither the presiding judge nor the official court reporter assigned to this Division will be available. The Court is confronted with the national observance of a holiday on May 25, 1981 and the standing date for a memorial service for deceased state judges and attorneys on the afternoon of May 27 following. In addition, a 3-week trial of a civil action, which has been long-delayed and long-assigned, is to commence in another Division of this Court on June 1.

If notice of such an agreement, as is in discussion, is given the Court, the Court is authorized to defer decision on its acceptance or rejection until having had opportunity to consider, Rule 11(e)(2), Federal Rules of Criminal Procedure, the presentence report, Rule 32(c)(2), Federal Rules of Criminal Procedure. The defendant may give written consent for such presentence report to be made and for the Court to inspect it upon the notice of the agreement, *see* Rule 32(c)(1), Federal Rules of Criminal Procedure.

"* * * [N]o continuance will be allowed except for good cause shown and by order of the Court." Local Rule 7. The issue of the defendant's guilt or innocence on each count does not appear to be complex; he will be shown beyond a reasonable doubt to have sold within this Court's jurisdiction each respective motor vehicle which was a part of and constituted interstate commerce about the time alleged with knowledge that it was stolen or he will not be so shown beyond a reasonable doubt; he should know whether he did or did not do this in each instance. He has had counsel of his choice under retainer at least since his indictment, probably prior thereto; the fact that "Gordon Ball and Associates", his chosen counsel, made no arrangements for pretrial preparation herein while Mr. Ball, Esq. was involved (by appointment, the Court notices judicially) in another trial in another District is not deemed to provide good cause for the requested continuance.

One Court of Appeals has " * * * deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation [all footnote references are omitted from this quotation], the likelihood of prejudice from the denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. [It had] also explicitly considered the adequacy of the defense actually provided at trial, any skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation by other attorneys that accrues to his benefit. * * * " *United States v. Uptain,* C.A. 5th (1976), 531 F.2d 1281, 1286–1287[3]. With the exception of the final consideration mentioned above, the defendant Mr. Ball's situation appears to this Court to be favorable to a denial of a continuance.

Nevertheless, the Court is amenable to a consideration of any plea-bargaining upon which the prosecution and defense may have agreed, the acceptance by the Court of which would resolve its current scheduling predicament, PROVIDED the defendant wishes to and does give his consent now, in writing, to the advance preparation by a probation officer of this Court of a presentence report and its inspection by the Court immediately upon notice of the agreement. " * * * Rule 32 * * * clearly permits the preparation of a presentence report before a guilty plea or conviction * * *," *Gregg v. United States* (1969), 394 U.S. 489, 491, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442, 446[1], " * * * to aid the judge in deciding whether to accept a plea agreement, and to expedite the imposition of a sentence when the defendant has indicated that he may plead guilty * * * " by agreement. Wright's *Federal Practice and Procedure—Criminal* (1980 Supplement to volumes 1, 2 & 3) at p. 513, § 523, n. 34.1.

Therefore, upon the filing with the clerk of this Court of such written consent, the clerk will notify the summoned-jurors not to report for jury-duty on Monday, May 18, 1981, but to report, instead, at 12:30 o'clock, p. m., Tuesday, May 19, 1981. The Court will accept notice of any plea-bargaining agreement at that same hour on Monday, May 18, 1981, if same is offered. In the absence of such consent by midnight, May 7, 1981, the motion for a continuance will be denied, and the jury will report as earlier notified on May 18, 1981.

## ON ADMISSIBILITY OF EVIDENCE

The prosecution herein applied for permission to cross-examine the defendant Mr. Jay Ball regarding his prior convictions in this Court 12 years ago of violating the federal internal revenue laws pertaining to liquor and, if required after such cross-examination, to introduce evidence thereof. It is claimed it is entitled so to do on the authority of Rules 609(a), (b), Federal Rules of Evidence, under the circumstances.

■ Such evidence is not barred by the time-limit of Rule 609(b), *supra.* The Court notices judicially from its own records in *United States of America, plaintiff, v. Jay V. Ball, et al., defendants,* criminal action no. 7045, this district and division, that Mr. Ball was released from confinement from the prior conviction therein less than 10 years ago, *viz.,* on October 10, 1972, and commenced then his period of probation to follow such release. Therefore, if at all, the proposed evidence may be received only under the provisions of Rule 609(a)(1), Federal Rules of Evidence.

The Court notices further judicially from its foregoing record that the crimes of which Mr. Ball was convicted were punishable, and one was punished, by imprisonment in excess of one year under the law under which he was convicted. The remaining question, accordingly, is whether the probative value of admitting this evidence outweighs its prejudicial effect to the defendant. *Idem.*

For the purpose of making this determination, the interests of justice appearing to so require, the Court conducted a hearing on the preliminary question stated out of the hearing of the jury. Rule 104(c), Feder-

al Rules of Evidence. The prosecuting attorney made a brief recital of the circumstances to buttress its contention that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, and the defendant undertook to rebut the presentation by the prosecution by pointing out his view the possible prejudicial effect to him if the evidence is admitted. *Cf. United States v. Sims,* C.A. 6th (1978), 588 F.2d 1145, 1149[3] (relating to a consideration under Rule 609(b), *supra* ), citing and quoting-from *United States v. Mahone,* C.A. 7th (1976), 537 F.2d 922, 929, certiorari denied (1976), 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627.

Among the factors taken into account in making the determination were:

(1) the impeachment value of the prior crimes;

(2) the point in time of the conviction and the witness' subsequent history;

(3) the similarity between the past crimes and the charged crimes;

(4) the importance of the defendant's testimony; and

(5) the centrality of the credibility issue. *See* opinion of Chief Justice (then Circuit Judge) Burger in *Gordon v. United States,* C.A.D.C. (1967), 383 F.2d 936, 940.

There are rare and exceptional circumstances lending emphasis to the first, fourth and fifth factors recited despite the fact that the prior crimes are within a few months of having become stale *per se,* and the dissimilarity between the defendant's past crimes and those with which he is charged herein. The only contested issue now is whether Mr. Ball knew the vehicles he sold in the 10 instances charged were stolen at the respective times he sold them. There has been testimony from the witness Mr. Coffey which, if he is credited sufficiently and even minimal weight is accorded it, will suffice to sustain the guilt of Mr. Ball beyond a reasonable doubt on 2, if not all, of the counts of the indictment herein. Testimony of Mr. Coffey was denied *in toto* by Mr. Ball, so that his testimony has assumed gigantic proportions and the issue of the respective credibilities of Messrs. Ball and Coffey occupies a place of extreme centrality in the determination of the guilt or innocence of Mr. Ball.

There is now testimony before the jury that the witness Mr. Coffey has been convicted of multiple felonies, placing his credibility in issue generally; that he has received some inspirational promise from the prosecution pertaining to his own involvement in these crimes, requiring the jury to examine his testimony ·with greater care and giving rise to possible inferences that Mr. Coffey may have colored his testimony in his own interest and may have had a motive to testify falsely; that Mr. Coffey may have been an accomplice of Mr. Ball's in some of the crimes charged against the latter, which also requires the jury to receive Mr. Coffey's testimony with caution and to weigh it carefully; and that there may be personal advantages to Mr. Coffey's testifying in the manner that he did. If Mr. Ball's credibility is not placed in issue generally also by the proposed evidence showing that he, too, has been convicted of felonies, the jury would be justified in accrediting Mr. Ball as a witness fully and discrediting Mr. Coffey completely and in giving Mr. Ball's testimony full weight and Mr. Coffey's little or none.

■ The prejudice to Mr. Ball from the admission of evidence of his prior convictions relates only to shedding light on his credibility as a witness in this action and any tendency on his part as a witness toward truthfulness and veracity; there is little danger that this prejudice would result in his conviction in this prosecution because of his convictions earlier of completely dissimilar crimes. The fact that Mr. Ball has violated the law in the past implies that he is more likely to give false testimony than other witnesses. *United States v. Harding,* C.A. 7th (1975), 525 F.2d 84, 89, cited and quoted from in *United States v. Sims, supra,* 588 F.2d at 1148.

■ Evidence has probative value if it tends to prove an issue. *Liquor Control Commission v. Bartolas* (1963), 10 Ohio

Misc. 225, 225 N.E.2d 859, 862. The proposed evidence, under the circumstances, undoubtedly has probative value. The jurors are much more likely to arrive at the truth of some of the matters in issue if they are made aware that both Messrs. Ball and Coffey are convicted felons.

█ The Court hereby DETERMINES that the probative value of admitting the proposed evidence outweighs its prejudicial effect to the defendant Mr. Ball, and it will be

ADMITTED with proper cautionary instructions.

## ON MOTION TO DISCHARGE JUROR

The unsequestered jury was impaneled, sworn and instructed by the Court herein on Monday, May 18, 1981. Among the instructions received by each juror was the admonition to report to the Court " * * * at your very next opportunity * * * " any communication with him or her undertaken by anyone relating to such service as a juror.

On the same evening, juror no. 52 on current panel no. 2, Mr. Brownlow George Bowman, seated in this trial as juror no. 2, received a telephone-call at his home in Greene County, Tennessee from an unidentified caller. Mr. Bowman was of the impression that such caller was male and a White person; beyond that, he had no indication (or even "a guess") as to the identity of his caller or in whose behalf such call may have been made.

The gist of the caller's conversation was that such caller understood that Mr. Bowman was under instruction not to discuss this case, but that there " * * * is a lot of money floating-around * * * " in connection with it. Mr. Bowman replied that he was " * * * not interested * * * " therein and undertook to conclude the conversation. Before he was able to replace the receiver of his telephone, Mr. Bowman was asked if he knew any of his fellow-jurors, replied that he did not, and concluded the call.

Mr. Bowman testified that he hardly knew whether to interpret the call he received as " * * * a threat or as an attempted bribe. * * * " He resented the effort which he interpreted as an effort to " * * * intimidate me * * * " and was determined not to be intimidated by anyone " * * * inside of Court or outside of Court. * * * " He mulled-over the issue of what he might do to thwart any effort to intimidate him in his jury-service herein throughout the second day of trial, turned-and-tossed until after midnight as he tried to sleep that night, and decided he would report the incident to the Court the next morning.

After the juror arranged through the clerk of the Court for an interview with its presiding judge, an evidentiary hearing was conducted by such judge which was taken-down in its entirety by the official court reporter assigned to this Division. Mr. Bowman said under his oath taken previously that he held no concept as to which, if either, "side" on this lawsuit may have been or not been implicated in the call he received; that he had not communicated the fact of its receipt to any fellow-juror or anyone else (except the clerk of this Court to arrange the interview), except as necessary briefly to satisfy the limited curiosity of his wife (who had answered the telephone when the call was received). He stated that, in so far as he knew and believed, his wife had not communicated to anyone the fact of the call or its content.

Mr. Bowman testified that he remained uninfluenced in any way by the foregoing incident; that he would make no decision the jury herein is required to make any differently on account of it than he would have made had it not occurred; and that he was confident he could remain fair and impartial as a juror herein. Upon the resumption of trial, counsel and the defendant were summoned to Chambers; the testimony of Mr. Bowman was read to them in its entirety from the foregoing notes of the court-reporter; and they were given the opportunity to interrogate Mr. Bowman further.

Thereupon, Mr. Bowman was excused from the hearing, and the defendant moved that Mr. Bowman be dismissed from the

jury and that the trial proceed with 11 jurors.** The Court took such motion under advisement and *enjoined* all participants therein not to reveal to anyone the fact or content of such hearing. Trial was resumed for its 3d day with the panel of 12 jurors as initially constituted.

The procedure followed by the Court enabled the Court to determine the circumstances surrounding the untoward incident, any impact thereof upon the juror Mr. Bowman, and that no prejudice to the defendant Mr. Ball resulted. *Remmer v. United States* (1954), 347 U.S. 227, 229–230, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656 (*see* headnote 2); cited in *Morgan v. United States,* C.A. 5th (1968), 399 F.2d 93, 96–97, certiorari denied (1969), 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568, (observing the continuing vitality of the principle laid down by Justice Holmes in *Patterson v. People of State of Colorado* (1907), 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879, 881, that conclusions to be reached in a case are to be induced only by evidence and argument in open court and not by outside influence from private talk or public print, as illustrated more recently by *Sheppard v. Maxwell* (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; *Estes v. State of Texas* (1965), 381 U.S. 352, 85 S.Ct. 1628, 14 L.Ed.2d 543, rehearing denied (1966), 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118; and *Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751), *ibid.,* 399 F.2d at 96, n. 1.

There is no showing that any juror herein may have been affected by the incident except Mr. Bowman; he had not related his experience to any other juror and maintains under oath that he will not. The only problem, therefore, was whether Mr. Bowman would reach a different conclusion in this action because of the impact upon him of the private talk thrust upon him by an outsider to the trial, and whether the occurrence of the incident might in some way prejudice the defendant Mr. Ball.

There is a presumption that such private talking by the outsider with a juror herein was prejudicial to the defendant Mr. Ball which, for obvious reasons, is rebuttable. *Remmer v. United States, supra,* 347 U.S. at 229, 74 S.Ct. at 451, 98 L.Ed. at 656 (headnote 1). Were the presumption not rebuttable, all a defendant in a criminal trial would need to do to gain a mistrial would be to call-up, or caused to be called-up, a sufficient number of jurors to render the continuance of his or her trial an impossibility.

That presumption was rebutted here by the positive testimony of the juror Mr. Bowman that the private call he received had no impact upon him which would interfere with his continuing to be fair and impartial in the performance of his duties as a juror herein, and that the conversation would not cause him to make any decision the jury is required to make herein any differently than he would have made it had he not received the call. The Court, accordingly, hereby DETERMINES that there was no prejudice or other harm to the defendant Mr. Ball emanating from the private talk of an anonymous caller with the juror Mr. Bowman.

The Court announced at the hearing an intention to interrogate the members of the jury as a unit in a general manner at some point in the trial to determine whether any member other than Mr. Bowman had been contacted in a similar or other manner. No such contact has been reported. Upon mature reflection, it is concluded that such an inquiry would only serve to alert the other jurors to the fact that Mr. Bowman had been called and that someone was undertaking to interfere with the jurors' performance of their duties. This was the error committed earlier in this Court which appears to have contributed to its reversal for not discharging all the jurors and declaring a mistrial. *Stone v. United States,* C.A. 6th (1940), 113 F.2d 70.

** The parties had stipulated pretrial that the unanimous verdict of less than 12 jurors would constitute the verdict of the jury if any juror or jurors was or were dismissed from the panel for good cause prior to the return of any final verdict. *See* Rule 23(b), Federal Rules of Criminal Procedure.

For all such reasons, the motion of the defendant Mr. Ball, that the juror Mr. Bowman be discharged as a member of the jury and that the trial proceed with 11 jurors, in accordance with the pretrial stipulation of the parties, hereby is OVERRULED. The Court is giving consideration to making appropriate inquiries when and if the jury reports a unanimous verdict to ascertain if the foregoing conversation affected such verdict(s) in any manner.

## ON DISCHARGE OF JUROR DURING DELIBERATIONS

### I

■ The parties stipulated in writing pretrial with the approval of the Court that a valid verdict may be returned herein by a jury of less than 12 jurors should the Court find it necessary to excuse one or more jurors for any just cause after trial commenced. Rule 23(b), Federal Rules of Criminal Procedure. Such rule is constitutional. *Patton v. United States* (1930), 281 U.S. 276, 298–300, 50 S.Ct. 253, 258, 74 L.Ed. 854, 863–864 (headnote 6); *accord: Williams v. Florida* (1970), 399 U.S. 78, 86, 90 S.Ct. 1893, 1898, 26 L.Ed.2d 446, 452–453[7].

The Court found it necessary to excuse juror no. 37, Mrs. Betty J. Phillips, seated as juror no. 7 and its presiding officer herein, after trial and deliberations of the jury herein had commenced. The Court determined that such juror had become disqualified to perform her duty as a fair and impartial juror from facts and circumstances which so convinced the Court, involving the defendant, one of his witnesses, and the husband of such juror who had been a spectator throughout the trial. " * * * A juror may be discharged * * * when facts and circumstances are presented which convince the [C]ourt that a juror's ability to perform his [or her] duty has become impaired. * * " *United States v. Floyd,* C.A.2d (1974), 496 F.2d 982, 990[9].

Those facts and circumstances which had convinced this Court that such juror's ability to perform her duty had become impaired were communicated on the record fully in Chambers in consultation with counsel of record for the parties before the determination was made. The juror Mrs. Phillips was discharged from the jury thereafter out of the presence of all other jurors; the other 11 jurors were instructed to select another of their number to preside over their deliberations; and the jury was instructed to resume its deliberations, which it did.

### II

While agreeing that, under the aggregate of the circumstances presented, the discharge from the jury of Mrs. Phillips was probably indicated, counsel of record for the defendant renewed his motion that at the same time the juror Mr. Bowman also be discharged therefrom. *See* memorandum opinion and order herein of May 22, 1981, 547 F.Supp. 935. The motion was again denied, although its content remains "of active concern" to the Court and will be pursued if any unanimous verdict is returned herein.

■ The Court, having determined earlier that any unanimous verdict of the jury will not be contaminated by the private talk thrust upon Mr. Bowman by an anonymous telephone-caller, it would be necessary to interrogate the remainder of the jurors before amending that determination. The Court is justified in not interrogating other jurors in this situation at this time and perhaps bringing to their attention that someone might be undertaking to influence the jury improperly. *United States v. Brown,* C.A. 6th (1978), 571 F.2d 980, 990–991[10], [11].

## ON MOTION FOR NEW TRIAL

The defendant Mr. Ball moved timely for a new trial, Rule 33, Federal Rules of Criminal Procedure, after his conviction by a jury of 10 violations of the Dyer Act. The motion borders on frivolity, including as it did a request for a new trial on the ground that the Court erred in failing to grant a mistrial, when there had been no motion for a mistrial, and on the ground that the Court erred in giving the jury the so-called "Allen

Charge", when it has been approved repeatedly by the Supreme Court as well as the United States Court of Appeals for this Circuit.

 The first two such grounds relate to the sufficiency of the evidence.*** There was ample evidence from which the jury could have found Mr. Ball guilty beyond a reasonable doubt under each of the 10 counts of the indictment herein. As to each count, the only viable dispute was whether, at the time he sold the particular motor vehicle, Mr. Ball " * * * then knew the said motor vehicle to have been stolen. * * * "

 The possession by Mr. Ball of the 10 motor vehicles, admittedly recently-stolen, was sufficient to make a prima facie case that he knew they were stolen. *United States v. Stephens*, C.A. 6th (1974), 492 F.2d 1367, 1373[3], certiorari denied (1974), 419 U.S. 852, 95 S.Ct. 93, 42 L.Ed.2d 83 and *sub nom. Silverman v. United States* (1974), 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 114. Whether the defendant had the requisite state-of-mind was an issue of fact required to be submitted to the jury, *Morissette v. United States* (1952), 342 U.S. 246, 274, 72 S.Ct. 240, 255[10], 96 L.Ed. 288, to be determined by it from the circumstantial, as well as direct, evidence. *Schwachter v. United States*, C.A. 6th (1956), 237 F.2d 640, 643[1–3].

The Court has discussed thoroughly the matters relating to the 3d and 4th grounds urged in support of the motion. *See* memoranda opinions and orders herein of May 22, 27, 1981, 547 F.Supp. 935, 937. The discharge of the juror Mrs. Phillips was in accordance with the stipulation herein of May 18, 1981 and without objection by the defendant.

Subsequent events have not convinced the Court that its earlier determination, " * * * that there was no prejudice or other harm to the defendant Mr. Ball emanating from the private talk of an anonymous caller with the juror Mr. Bowman * * *," was incorrect; following the return of the verdicts herein and the poll of the individual jurors, the Court interrogated them as to whether any of them had any knowledge of the telephone-call received by Mr. Bowman or had been subjected to any outside influence of any character. The Court is convinced that the verdicts returned herein were induced only by evidence and argument in open court and that no prejudice to Mr. Ball resulted from these unfortunate events.

The admission in evidence of Mr. Ball's prior convictions of felonies under Rule 609(a), Federal Rules of Evidence, was proper. *See* ruling on admissibility of evidence herein of May 22, 1981, 547 F.Supp. 933. Appropriate limiting instructions were given the jury both at the time the evidence was introduced as well as in the Court's instructions. *Cf. United States v. Yopp*, C.A. 6th (1978), 577 F.(2d) 362, 366.

 The giving of the Allen-type, *see Allen v. United States* (1896), 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, supplemental instructions to the jury was not error. *United States v. Nickerson*, C.A. 6th (1979), 606 F.2d 156, 158–159[4], certiorari denied (1979), 444 U.S. 994, 100 S.Ct. 528, 62 L.Ed.2d 424; *United States v. Giacalone*, C.A. 6th (1978), 588 F.2d 1158, 1166–1167[6], certiorari denied (1979), 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045; *United States v. LaRiche*, C.A. 6th (1977), 549 F.2d 1088, 1092–1093[1–6], certiorari denied (1977), 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383; *cf. United States v. Scott*, C.A. 6th (1977), 547 F.2d 334, 336–338. The Court's instructions were carefully tailored to conform with the law of this circuit and the language implicitly approved by the Supreme Court in *Kawakita v. United States* (1952), 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249. *See United States v. Giacalone, supra*, 588 F.2d at 1166–1167. That the jury reached unani-

***The first such ground urges error in the failure of the Court to grant the motion of Mr. Ball for a judgment of acquittal at the conclusion of the evidence. Such motion went to the sufficiency of the evidence to support a verdict.

*United States v. Cox*, C.A. 6th (1979), 593 F.2d 46, 48[1, 2]. Interestingly, Mr. Ball did not renew his motion for a judgment of acquittal after the discharge of the jury. *See* Rule 29(c), Federal Rules of Criminal Procedure.

mous verdicts some 1½ hours after the giving of the supplemental instructions cannot be considered in determining whether the instructions were improper; such is a factor to be considered only if it were determined first that the instructions were improper. *Ibid.,* 588 F.2d at 1167–1168[7].

As always, the Court did its best to see that Mr. Ball received a trial free from any error whatsoever. The law, however, " * * * does not require that a defendant receive a perfect trial, only a fair one * *." *Michigan v. Tucker* (1974), 417 U.S. 433, 446, 94 S.Ct. 2357, 2365[4], 41 L.Ed.2d 182. The Court is convinced that Mr. Ball received such a fair trial.

There is no reason to believe that if another week or more were spent retrying this case before another jury any different results would be reached. The remedy of granting a new trial " * * * is used sparingly and in exceptional cases. * * *" *United States v. Grindstaff,* D.C.Tenn. (1978), 479 F.Supp. 599, 605.

This not being such an exceptional case, the motion of the defendant for a new trial hereby is

DENIED.